71 N.J. Super. 385 (1961)
177 A.2d 69
EAST PHOTO LAB, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
BLUEPRINT PHOTOSTAT AND PHOTO EMPLOYEES UNION, LOCAL 249, I.J.W.U., AFL-CIO, AN UNINCORPORATED ASSOCIATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 21, 1961.
*386 Mr. Gerald B. Goldberg argued the cause for plaintiff (Mr. Jacob M. Goldberg, attorney).
Mr. Leonard Greenwald, of the New York Bar, argued the cause for defendant (Mr. Bernard Cherney, attorney).
BARGER, J.C.C. (temporarily assigned).
The defendant moves to dismiss the complaint on the ground that the courts of this State lack jurisdiction over the subject matter. The complaint seeks damages for an alleged secondary boycott engaged in by the employees of the plaintiff under the alleged direction and supervision of the business and organizing *387 representative of the defendant union. The defendant contends that jurisdiction is exclusively within federal authority, and therefore this action is pre-empting that authority.
The plaintiff is a domestic corporation engaged at Roselle Park, New Jersey in the business of photo-finishing and photo supplies. It is admitted that the plaintiff is engaged in interstate commerce within the meaning of the Labor Management Relations Act of 1947, sec. 2(6), as amended, 29 U.S.C.A. § 152(6).
The defendant is a New York unincorporated association in which employees participate for the purpose of dealing with employers concerning grievances, labor disputes and conditions of work generally, and the defendant union is a labor organization within the meaning of Labor Management Relations Act of 1947, sec. 2(5), as amended, 29 U.S.C.A. § 152(5).
As the result of an organizing campaign, 21 employees of the 27 employed by the plaintiff applied to the defendant union for membership. Plaintiff refused to recognize or negotiate with the defendant union as bargaining agent and a strike resulted. Thereafter, the defendant union placed some of the strikers as pickets in front of several premises occupied as drugstores which were customers of the plaintiff. These pickets carried the following notice:
"NOTICE TO PUBLIC. THIS STORE USING SERVICES OF EAST PHOTO WHICH IS NON-UNION AND DOES NOT EMPLOY MEMBERS OF LOCAL 249."
At the time this picketing of plaintiff's customers commenced, there was also distributed to each customer a letter advising them that the purpose of the picketing was to inform the public of the dispute between the plaintiff and the defendant. The letter explained that the defendant union was not attempting to prevent any such customer from doing business with the plaintiff whose employees were on strike. It expressed appreciation for any letter *388 which might be written to the plaintiff asking the plaintiff to deal with the defendant union as the representative of a majority of the plaintiff's employees. The letter further indicated that the plaintiff had refused to negotiate with the defendant union despite a promise to do so if it was the wish of its employees. The plaintiff did, in fact, conduct a vote among its employees and found that the majority desired bargaining representation by the defendant union. In spite of this expressed desire, the company still refused to recognize the employees' choice of a bargaining representative. A copy of this letter is attached to defendant's memorandum.
On or about June 28, 1961, before any action had been filed in this court, the plaintiff filed a charge with the National Labor Relations Board alleging that the defendant union, as a result of the alleged conduct, had engaged in and was then engaging in unfair labor practices within the meaning of the Labor Management Relations Act of 1947, sec. 8(b)(4)(ii), subpar. (B), 29 U.S.C.A. § 158(b)(4)(ii)(B). The charge generally alleged that the defendant union, by the acts and conduct referred to in the above mentioned sections, did threaten, coerce and restrain the customers of the plaintiff, and did generally solicit, force and require said customers to cease doing business with the plaintiff. The aforesaid charge was referred to and investigated by the Regional Director of the Twenty-second Region of the National Labor Relations Board. On or about July 13, 1961 the Regional Director filed a petition in the United States District Court for the District of New Jersey for an injunction under the Labor Management Relations Act of 1947, sec. 10(b), (j), 29 U.S.C.A. § 160(b), (j), alleging that he had reasonable cause to believe that said charge was true and, unless enjoined, the union would continue or repeat the acts complained of.
On or about July 13, 1961 the Federal District Court for the District of New Jersey granted an order for a temporary injunction, concluding that there was reasonable *389 cause to believe that the union had engaged in conduct which was a violation of the aforementioned section. Prior to the issuance of the temporary injunction the union voluntarily withdrew the pickets from both the premises of the customers of the plaintiff and the plaintiff's plant, and the employees returned to work. Following the temporary injunction the National Labor Relations Board issued a complaint, to which complaint the defendant union has filed an answer, and the cause is now pending before the National Labor Relations Board.
On or about July 27 the defendant union also filed charges against the plaintiff alleging that the plaintiff, by its refusals and failure to negotiate, was engaged in unfair labor practices within the meaning of Labor Management Relations Act of 1947, sec. 8(a), subsections (1), (3) and (5), and such charges are presently pending before the National Labor Relations Board.
There is no allegation or proof offered of any physical intimidation, violence or threats thereof. In fact, it was stipulated before the Board that no such elements were a factor in this case. The alleged conduct amounted to peaceful picketing with secondary economic pressures.
Reference herein is to the following statutory enactments: § 7 of the amended National Labor Relations Act, 29 U.S.C.A. § 157; § 8 of the amended National Labor Relations Act, 29 U.S.C.A. § 158; § 303 of the amended National Labor Relations Act, 29 U.S.C.A. § 187. Hereinafter these will be on occasions referred to as sec. 7, sec. 8 and sec. 303.
The defendant relies upon San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236 (1959), 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), hereinafter referred to as Garmon II, and regards it as decisive of the jurisdictional issue raised by this motion to dismiss, while the plaintiff relies principally on the case of International Longshoremen's, etc. v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952), as indicating that a *390 state court does have jurisdiction of a suit for damages arising from conduct within the prescribed language of the Labor Management Relations Act of 1947, sec. 303(a), (1) and (b), 29 U.S.C.A. § 187(a), (1) and (b).
"§ 303(a) [29 U.S.C.A. § 187(a)] of the Labor Management Relations Act, 1947, is amended to read as follows:
[§ 704(e).] "It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b) (4) of the National Labor Relations Act, as amended." [Sec. 158(b) (4) of this title. This section generally relates to conduct comprising a secondary boycott.] As amended Sept. 14, 1959, Pub. L. 86-257, Title VII, § 704(e), 73 Stat. 545.
§ 303(b). "Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit." June 23, 1947, 3:17 p.m., E.D.T., c. 120 Title III, § 303, 61 Stat. 159.
Garmon II involved both the peaceful picketing of the primary employer's place of business in order to compel recognition and the exertion of secondary pressures in an attempt to coerce execution of the proposed contract. The unions contested this finding, claiming that the only purpose of their activities was to educate the workers and persuade them to become members. On the basis of its findings the California court enjoined the unions from picketing and from the use of the other pressures applied until one of the unions had been properly designated as a collective bargaining agent. The California court also awarded damages for losses sustained by the employer. When this suit was instituted in the state court, a proceedings had been instituted before the National Labor Relations Board, and jurisdiction was declined by that administrative tribunal, as the employer did not qualify under the commerce requirement within the meaning of *391 section 8(b)(4) of the National Labor Relations Act. On appeal, the California Supreme Court sustained the judgment of the Superior Court of that state and held that since the National Labor Relations Board had declined to exercise its jurisdiction, the California courts had power over the dispute. That court also found that the conduct of the union constituted an unfair labor practice under the Labor Management Relations Act of 1947, par. 8(b), subpar. (2), 29 U.S.C.A. § 158(b) (2), not permitted under California law. The original opinion by the California Supreme Court did not, with reasonable clarity, specify whether state or federal law was the basis for the damage relief granted. Garmon v. San Diego Building Trades Council, 49 Cal.2d 595, 320 P.2d 473 (1958). Certiorari was then granted, 357 U.S. 925, 78 S.Ct. 1371, 2 L.Ed.2d 1369 (1958), and the Supreme Court decided in this case, as in Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957), and Amalgamated Meat Cutters, etc. v. Fairlawn Meat, 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613 (1957), that the refusal of the National Labor Relations Board to assert jurisdiction did not provide the states with power over any activities that they would otherwise be pre-empted from regulating. The Guss and Amalgamated cases involved relief of an equitable nature. In the California case the judgment was vacated and the cause was remanded as indicated, it not being clear whether the judgment for damages arising from the peaceful picketing and secondary pressures could be sustained under any California law. The state court was to give consideration to the question of whether the judgment for damages was based on a violation of California law and whether such law was displaced by a federal law preventing the courts of California from granting an award for damages arising out of the conduct in question. The remanding court indicated that any further consideration by itself would have to await a decision by the state court. On remand, the California court, in *392 furtherance of the Guss and Amalgamated decisions, set aside the injunction but sustained the award of damages. Garmon v. San Diego Building Trades Council, supra. The Supreme Court of California decided that California had jurisdiction to award damages resulting from the union's activities, as these activities constituted a tort based on an unfair labor practice under state law as well as on general tort provisions of the California Civil Code, §§ 1677, 1708, and also on enactments relating to labor relations under the California Labor Code, § 923 (1937), §§ 1115-1118 (1947). New Jersey does not have any such comparable statutes.
The Supreme Court of the United States again granted certiorari 357 U.S. 925, 78 S.Ct. 1371, 2 L.Ed.2d 1369 (1958), in order to determine whether the California court had jurisdiction to award damages arising out of peaceful union activity which it could not enjoin.
Generally speaking, the gravamen of a "secondary boycott" is that its sanctions bear, not upon the employer who is a party to the dispute, but upon some party who has no concern in the dispute, and its aim is to compel him to stop business with the employer in the hope that the employer will be induced to give in to the demands of the employees. International Broth. of Elec. Workers, Local 501 v. N.L.R.B., 181 F.2d 34, 37 (2 Cir. 1950); Kingston Trap Rock Co. v. International Union of Operating Engineers, etc., 129 N.J. Eq. 570, 577 (E. & A. 1941); E.L. Kerns Co. v. Landgraf, 128 N.J. Eq. 441, 443 (E. & A. 1940); Van Buskirk v. Sign Painters Local No. 1231, 127 N.J. Eq. 533, 534 (E. & A. 1948); Bayonne Textile Corp. v. American Federation of Silk Workers, 116 N.J. Eq. 146, 159 (E. & A. 1934); Duplex Printing Press Co. v. Deering, 254 U.S. 443, 450, 41 S.Ct. 172, 65 L.Ed. 349 (1920); Annotation, 92 A.L.R. 1450.
The motion here relates to and is concerned with the pre-emption doctrine, as the federal or state jurisdiction difficulty is not experienced in those cases where there is *393 the factor or element of actual intimidation and violence warranting injunctive relief and damages, as commented upon by Mr. Justice Frankfurter in Garmon II. State jurisdiction has prevailed in those situations because of the compelling state interest in and right to maintain public order and peace. Difficulty arises in those cases where the mentioned elements of intimidation and violence are lacking.
The right of the state to act rests upon the compelling necessity of the state to maintain such order and peace as guaranteed by the Constitution of the United States. United States Constitution, Amendment X; cf., N.J.S. 2A:15-51. Where the conduct is marked by violence and imminent threats to the public order, state jurisdiction has been permitted. Mr. Justice Frankfurter in Garmon II indicates this policy in the following language:
"* * * State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, [98 L.Ed. 1025, 74 S.Ct. 833, 835], found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the `type of conduct' involved, i.e., `intimidation and threats of violence.' In the present case there is not such compelling state interest." (359 U.S., at pp. 247-248, 79 S.Ct., at p. 781)
In Garmon II it was held that whether a particular activity is arguably protected under section 7, or arguably prohibited under section 8, is for the National Labor Relations Board to determine, and not for the federal or state court to determine. The court denied a state award for damages in Garmon II, and clearly distinguished the factual situations from those involved in United Construction Workers, etc. v. Laburnum, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954), and International Union, United Automobile Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1957). The activity complained of in *394 the Laburnum case was marked by violence and intimidation, factors which are absent in Garmon II and the instant case as well. Russell involved mass picketing and threats of violence, absent in the instant case. The court further pointed out that the strike could have been enjoined in the cases referred to by the state court because the union activity involved was not protected by federal law, and no conflict of remedies exists where there is a basis for concluding that both the Board and the state courts have jurisdiction under the particular circumstances involved. The concurring opinion in Garmon II emphasizes the fact that the activity complained of was most likely protected by section 7 of the National Labor Relations Act, and therefore should not be the subject of a damage suit in the California state court. However, from the two opinions in Garmon II, it is quite apparent that at least two lines of thought are in competition as to whether a state court can award damages for non-violent conduct. Mr. Chief Justice Warren, in his dissent in Russell, outlines some compelling reasons for denying the state court the right to award damages. Among them he points out that it will introduce a want of uniformity, with resulting confusion, whereby the consequences of violating the federal act will vary from state to state. He further mentions that the prospect of such liability on the part of a union for the conduct of its members in the course of concerted activities will inevitably influence the conduct of labor disputes. "It is precisely such an influence on the sensitive area of the labor relations that the preemption doctrines are designed to avoid," set forth at page 652, 78 S.Ct., at p. 943, of the Russell opinion. Although Mr. Justice Frankfurter did not join in the Russell dissent, his majority opinion in Garmon II carries with it the flavor of Mr. Chief Justice Warren's dissent in Russell. Another reason for limiting state jurisdiction is the tendency of frustrating the federal purpose.
*395 All the talk about pre-emption, and the division in thought, but united in decision, comments of the court in Garmon II, is merely background for the case sub judice. Plaintiff-employer's complaint alleges a secondary boycott under the Labor Management Relations Act of 1947, sec. 303(a), 29 U.S.C.A. § 187(a), as amended by section 704(e) of the Labor Management Reporting and Disclosure Act of 1959. The employer is seeking damages for injury suffered in his business by reason of the alleged secondary pressures, and brings action in a state court pursuant to section 303(b), 29 U.S.C.A. § 187(b), which permits such suit to be brought "in any other court having jurisdiction of the parties." There has been no issue raised in this case suggesting that this court does not have jurisdiction of the parties. The issue is the jurisdiction over the subject matter. Section 303(b), 29 U.S.C.A. § 187(b), it is noted, was not commented upon or referred to in Garmon II, the reason therefor not being clear, and it specifically authorizes suit to be brought in any court having jurisdiction of the parties as indicated, with respect to the secondary boycott, and prohibited conduct set forth in section (a) of the act which specifically refers to section 704(e). This 1959 amendment incorporates similar language formerly set forth in pars. (1), (2), (3) and (4) of § 303, and substitutes for the language of the paragraphs mentioned the language of the amendment, section 8(b)(4), amendment 704(a). It appears, with respect to secondary boycotts and the unlawful conduct set forth, that there was no congressional intent to pre-empt the rights of the state from hearing cases in which damages are sought for the prohibited conduct. All of the cases involving preemption, including Garmon II, are inapplicable in the light of section 303(b), 29 U.S.C.A. § 187(b), of the statutes cited as indicated. Garmon II does not mention section 303(b), and concerns itself with permitted or prohibited conduct under sections 7 and 8 of the National Labor Relations Act. In fact, the Supreme Court has spoken of *396 the very situation in International Longshoremen's Union v. Juneau Spruce Corp., supra. In the Juneau Spruce case the secondary boycott under Labor Management Relations Act of 1947, section 303(a), 29 U.S.C.A. § 187(a), also dealt with an unfair practice under Labor Management Relations Act of 1947, § 8(b) (4), 29 U.S.C.A. § 158(b)(4). As indicated above, the language in the Labor Management Relations Act of 1947, § 303(a) was amended by § 704(e) to read the same as § 8(b)(4), as amended by § 704(a) under the Labor Management Reporting and Disclosure Act of 1959. However, the remedy under the Labor Management Relations Act of 1947, § 8(b)(4), 29 U.S.C.A. § 158(b)(4), is an administrative one under the National Labor Relations Board while the remedy under the Labor Management Relations Act of 1947, § 303(b), 29 U.S.C.A. § 187(b) is for damages. Though the same violation is alleged, i.e., secondary boycott, under the legislation referred to, a double remedy is available to the aggrieved party. Douglas v. International Brotherhood of Elec. W.U., 136 F. Supp. 68, 73 (W.D. Mich, S.D., 1955). These remedies, furthermore, are independent of each other. The court, in United Brick Workers v. Deena Artware Inc., 198 F.2d 637 (6 Cir.) (1952), cert. denied 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1952), pointed out that the National Labor Relations Board may decide from the circumstances that the alleged secondary boycott was not a violation of the Labor Management Relations Act of 1947, § 8(b)(4), 29 U.S.C.A. § 158(b)(4), while a jury in a court may decide from the circumstances involved that the secondary boycott was a violation of the Labor Management Relations Act of 1947, § 303(a), 29 U.S.C.A. § 187(a). It has been pointed out in several cases that the state courts in pre-empting the jurisdiction of the federal courts may cause conflict and confusion, and this is true. However, the remedy is one for consideration of the legislative branch and not for the judicial branch since under existing legislation *397 two different fact-finding bodies are involved and different results may be reached as they were in United Brick Workers v. Deena Artware Inc., supra (see companion case before the National Labor Relations Board following the case cited above in 198 F.2d 645 (1952)). The possibility of an anomalous result does not nullify the damage award and the state court should be applying federal law when it finds conduct to be secondary boycotting. See Mr. Justice Traynor's dissent in Garmon v. San Diego Building Trades Council, supra. If Federal statutory and case law is applied by the state court, conflict and confusion could be substantially avoided to a minimum.
In a recent case involving an appeal from the United States District Court, District of Utah, Central Division, to the United States Court of Appeals, Tenth Circuit, No. 6629, and decided August 22, 1961, Dairy Distributors Inc. v. Western Conference of Teamsters, 43 Labor Cases, § 17,176, it was held that a federal trial court lacked jurisdiction to perpetually enjoin an employee from enforcing a state court judgment for damages against a union, after affirmance of the judgment by the state Supreme Court, in the following language:
"In brief, the action was brought by the Company to recover for damages occasioned by Local Union 976, Joint Council 67, Western Conference, The International Brotherhood of Teamsters, and others, through conduct prohibited by 29 U.S.C.A. § 187 (Sec. 303, LMRA, 61 Stat. 158). Jurisdiction of such a cause of action is granted to state courts having jurisdiction of the parties by Sec. 303(b) of the Act. Jurisdiction also specifically lies in the District Court of the United States."
The court concludes that Garmon II is not dispositive of or restrictive as to the issue, and that where the alleged conduct set forth in the complaint falls within the prohibited conduct of section 704(e) (amending section 303(a) of the Labor Management Relations Act, 1947) of the Labor Management Reporting and Disclosure Act of *398 1959, 29 U.S.C.A. § 187(a), even though intimidation and violence are not alleged, the state courts do have jurisdiction under section 303(b) of an action seeking damages for the prohibited conduct. The motion seeking a dismissal of the complaint is denied.