No. 24,973.

J. R. Nulty, *Appellant*, v. The Hart-Bradshaw Lumber and Grain Company et al., *Defendants* (J. S. Hart, *Appellee*).

SYLLABUS BY THE COURT.

Corporation—*Action for Accounting—Wrongful Conversion of Money—Conspiracy to Defraud.* A person who by conspiring with another, or by collusive agreement with the latter, assists him to violate his contract with a third person and thereby obtains the benefit of that contract for himself which he claims to hold for a corporation of which he is the principal stockholder, commits an actionable wrong against the third person and is liable to him for the damage caused him.

Appeal from Jewell district court; William R. Mitchell, judge. Opinion filed July 5, 1924. Reversed.

*D. M. McCarthy*, of Mankato, *A. W. Relihan*, *T. D. Relihan*, and *J. T. Reed*, all of Smith Center, for the appellant.

*R. W. Turner*, *Donald F. Stanley*, and *R. B. Turner*, all of Mankato, for appellee J. S. Hart.

The opinion of the court was delivered by

Marshall, J.: This action was commenced for an accounting as to rents due the defendant corporation and to recover a sum of money alleged to be due the plaintiff from the defendants and wrongfully converted by defendants Hart and Bradshaw. At the trial and immediately after the opening statement of the plaintiff, defendant Hart moved for judgment in his favor on the pleadings and statement of counsel for the plaintiff. That motion was sustained by the court, from which ruling the plaintiff appeals. The action was continued as to the other defendants pending this appeal.

The amended petition alleged that defendant Hart was president and principal stockholder of the defendant corporation; that the corporation owned and operated a lumber yard and a grain elevator at Randall, Kan.; that about July 7, 1919, the corporation, by its managing officers, defendants Hart and Bradshaw, employed the plaintiff to operate its lumber yard at a stipulated salary, and agreed to and did lease its grain elevator to the plaintiff and defendant Bradshaw; that about July 7, 1919, the plaintiff and defendant Bradshaw entered into an oral agreement of partnership to operate the elevator leased from the defendant corporation, and

to buy and sell grain at the elevator under the firm name of "Bradshaw & Nulty," it being agreed between them to borrow such capital as would be required to operate the business and to share equally in the profits and losses; and that it was also agreed that defendant Bradshaw was to keep the books and accounts of the partnership, that an accounting should be made on the demand of either partner, and that upon dissolution of the partnership the plaintiff was to receive his share of any profits derived from the business. The amended petition further alleged that the plaintiff and defendant Bradshaw operated the elevator until February 17, 1920, when plaintiff asked for an accounting, which was made, and which showed the profits of the partnership to be $9,306 with no unpaid debts except the rent on the elevator, the amount of which remained undetermined; that defendant Hart "informed the plaintiff that he, Nulty, had no interest in the grain business and that he would not be permitted to take any of the profits from said grain business"; that some time prior to February 17, 1920, the defendants Hart and Bradshaw had entered into a collusive agreement to cheat and defraud the plaintiff out of his profits in the grain business; and that the defendants converted the plaintiff's share of the profits to their own use and claim to hold it as the property of the defendant corporation. On the trial, counsel for the plaintiff stated to the jury that the evidence would show that the plaintiff had agreed to take five thousand dollars' worth of stock in the defendant corporation; that stationery was printed and the partnership was operated under the style and firm name of Bradshaw & Nulty; that notes at the bank were signed Bradshaw & Nulty, and that the firm name was signed to checks written by the partnership. There is nothing to show that the plaintiff took any stock in the corporation.

The only question presented is: "Does the petition filed state a cause of action against J. S. Hart, when considered with the statement of counsel and the other pleadings filed?"

There was no debt from Hart to Nulty, but according to the allegations of the petition and according to the trial statement, Hart conspired with Bradshaw to cheat the plaintiff out of his share of the profits arising from the business that had been done. The conspiracy was successful, and Hart through that conspiracy received the profits that belonged to the plaintiff, and still holds those profits as the property of the Hart-Bradshaw Lumber and Grain Company.

12 C. J. 604 contains this language:

"While the question is by no means free from conflict of opinion, the rule prevailing in a majority of jurisdictions at the present day is that one who maliciously, without just cause or excuse, persuades another to break a contract to the injury of the other party to the contract is guilty of an actionable tort."

Again, in 12 C. J. 586, it is said that—

"So it has been held that where two persons conspire with a husband to defraud his wife of her right of alimony and dower in the husband's property, and in pursuance thereof one of them, who holds the legal title to the real estate of the husband in trust, conveyed it to the other, and he mortgages the real estate for its value to an innocent mortgagee and gives the husband the proceeds of the mortgage debt to aid him in converting his property into money, and to leave the state, both are liable in damages to the wife for the amount of her judgment for alimony and the present worth of her dower interest, not in excess of the reasonable value of the real estate so transferred."

In 38 Cyc. 508 this language is found:

"It is a disputed point, whether, when the rendering of services is not involved, the case stands upon a different footing. On one hand it is said that 'an action cannot, in general, be maintained for inducing a third person to break his contract with the plaintiff; the consequence, after all, being only a broken contract, for which the party to the contract may have his remedy by suing upon it.' But the modern tendency is strongly toward the view that contract rights are property, that, as such, they are entitled to protection, and that malicious interference therewith gives a cause of action, although the methods employed are not inherently unlawful. It has been said 'that where a party has entered into a contract with another to do or not to do a particular act or acts, he has as clear a right to its performance as he has to his property, either real or personal, and that knowingly to induce the other party to violate it is as distinct a wrong as it is to injure or destroy his property. It is not a sufficient answer to say that he has a remedy against the party who has broken the contract.' "

An exhaustive discussion of this subject is found in the April number of the Harvard Law Review, volume 36, No. 6, by Francis Bowes Sayre, of the Harvard Law School. There the writer said:

"The results reached may be briefly summarized as follows:

"(1) The action for inducing breach of contract, although its roots are ancient, is in its modern form of recent development.

"(2) The limits of the tort are still so undefined that there is a real danger that courts may unconsciously extend them beyond their proper confines.

"(3) One of the essential elements of the tort is 'malice.' Courts have been unable to agree upon which constitutes 'malice.' Probably it means the intention to appropriate for oneself the promised advantages which another has secured by contract.

"(4) It would seem, therefore, that no action will lie for inducing breach of contract unless the defendant in committing the act which caused the

breach sought the same object as did the plaintiff in making the contract. If the defendant's aim was some object foreign to that of the plaintiff in making the contract, the defendant 'caused' but did not 'procure' the breach, and is not liable.

"(5) In those cases where both sought the same object, *i. e.,* where the defendant 'procured' or 'induced' the breach, whether he is liable or not depends upon a careful and critical balancing of interests. The defendant will be liable only if the plaintiff's interest in the protection of his contract rights against interference by outsiders outweighs the social and individual interest which come into conflict with it.

"(6) The action cannot be extended to cases where no breach of contract can be proved."

The allegations of the petition and the trial statement showed a wrong on the part of Hart against the plaintiff. That wrong was actionable.

The judgment as to Hart is reversed, and the trial court is directed to proceed with the cause.