[No. 33527.   *En Banc.*   August 8, 1957.]

DELL L. SELLES, *Respondent*, v. LOCAL 174 OF THE INTERNA-
TIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA
*et al., Appellants.*

¹Reported in 314 P. (2d) 456.

*Bassett, Geisness & Vance,* for appellants.

*Houghton, Cluck, Coughlin & Henry* and *Paul Coughlin,* for respondent.

SCHWELLENBACH, J.—Dell L. Selles commenced action in the superior court for King county seeking damages for the alleged refusal of defendants, through the union's hiring hall, to send him out to work as a teamster. The jury awarded him $6,572.15. A motion for judgment notwithstanding the verdict was denied, and this appeal follows.

At the times in question, Selles was, and still is, a member of Local 174 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. He had been a truck driver in the beverage and brewing industries and for several years had secured employment through the teamsters' hiring hall with companies engaged in interstate commerce.

For some time prior to April 3, 1952, there had been a controversy within the local with respect to the method of electing officers and the accessibility of information relative to union funds. Selles and others arranged for a meeting of members sympathetic with their views for the purpose of discussing their grievances. At about the time the meeting was to get under way, approximately one hundred fifty other members, not sympathetic, marched into the hall five abreast and broke up the meeting.

A few days later when Selles went to the hiring hall he was told that there would be no work for him. This was done in retaliation against him for his activities in helping to organize the meeting of April 3, 1952. He was without

work for over a year, except for two short periods of time, and was ultimately compelled to leave the industry and find less remunerative work in another field.

Selles filed a complaint with the national labor relations board, alleging the facts above related. The board took jurisdiction and issued a complaint. However, before a hearing could be had, he withdrew his charge and instituted this action in the state court to enforce a common-law tort liability for interference with his employment.

Appellant contends that the action complained of constitutes an unfair labor practice under the labor management relations act of 1947; that Congress, by that act, pre-empted the field; and the state court had no jurisdiction of the cause.

Section 8 (b) of the act (chapter 120, Eightieth Congress, Sess. I [61 Stat. 141] approved June 23, 1947), 29 U. S. C. A. (Sup.) § 158 (b) provides in part:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7:   .   .   ."

Section 7 provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a) (3)."

The right of self-organization includes the right to attempt to change the leadership and policies of a union. *Brown v. National Union of Marine Cooks & Stewards*, 104 F. Supp. 685.

In *Joanna Cotton Mills Co. v. National Labor Relations Board*, 176 F. (2d) 749, the court said:

"Not all activities in which employees act together are 'concerted activities' within the meaning of the statute, .   .   ."

"The words 'concerted activities' are limited in meaning by the words with which they are associated (noscitur a sociis), which have relation to. labor organization and collective bargaining, and by the purpose of such 'concerted activities', which is expressly limited by the immediately succeeding language to concerted activities 'for the purpose of collective bargaining or other mutual aid or protection,'
. . .

"We agree that the 'concerted activities' protected by the act are not limited to cases where the employees are acting through unions or are otherwise formally organized. It is sufficient that they are acting together for mutual aid or protection. See *N. L. R. B. v. Peter Cailler Kohler Swiss Chocolates Co., Inc.*, 2 Cir., 130 F. (2d) 503. Thus, an employee may not be discharged for concerted activities to get pay for overtime work, *N. L. R. B. v. Schwartz*, 5 Cir., 146 F. (2d) 773, 774; nor for concerted activities in protesting the employment of a cashier whose employment the employees think will affect their earnings, *N. L. R. B. v. Phoenix Mutual Life Ins. Co.*, 7 Cir., 167 F. (2d) 983, nor for demonstrating in protest over the firing of a union president, *Carter Carburetor Corp. v. N. L. R. B.*, 8 Cir., 140 F. (2d) 714. As said by Judge Duffy in *N. L. R. B. v. Phoenix Mutual Life Ins. Co., supra* [167 F. (2d) 988], 'A proper construction is that the employees shall have the right to engage in concerted activities. for their mutual aid or protection even though no union activity be involved, or collective bargaining be contemplated.' It is clear, however, that to be protected the purpose of the concerted activities must be the mutual aid or protection of the employees."

Respondent and his companions, in. organizing the meeting in question, were acting together, "for mutual aid and protection," within the meaning of the act.

Section 8 (b) (2) makes it an unfair labor practice for a labor organization or its agents "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) . . ." That subsection refers to "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ."

■ The proof showed that the union, through its officers, controlled employment in respondent's field of work,

and that without approval of its officials no work could be obtained. The refusal to dispatch respondent for work, in retaliation for the part he played in organizing the meeting, constituted "discrimination in regard to hire."

■ The facts reasonably bring the controversy within the purview of the act. However, that alone is not determinative of the problem confronting us. Does the national labor relations board have exclusive jurisdiction over matters involving conduct which constitutes an unfair labor practice under the act, so as to preclude a state court from hearing and determining a common-law tort action for damages resulting from interference with employment based on such conduct?

Concerning pre-emption in the field of labor relations, the United States supreme court said, in *International Union v. Wisconsin Employment Relations Board*, 336 U. S. 245, 93 L. Ed. 651, 662, 69 S. Ct. 516:

"Congress has not seen fit in either of these Acts to declare either a general policy or to state specific rules as to their effects on state regulation of various phases of labor relations over which the several states traditionally have exercised control. . . . However, as to coercive tactics in labor controversies, we have said of the National Labor Relations Act what is equally true of the Labor Management Relations Act of 1947, that 'Congress designedly left open an area for state control' and that 'the intention of Congress to exclude the States from exercising their police power must be clearly manifested.' *Allen-Bradley Local v. Wisconsin Employment Relations Board*, 315 U. S. 740, 750, 749."

That case involved a question whether the Federal act took precedence over a state act under which the state board ordered a labor union to cease and desist from instigating certain intermittent and unannounced work stoppages under a plan for a new method of putting pressure upon the employer. The court concluded:

"We find no basis for denying to Wisconsin the power, in governing her internal affairs, to regulate a course of conduct neither made a right under federal law nor a violation

of it and which has the coercive effect obvious in this device."

In addition to the above case, the supreme court has recognized the jurisdiction of state courts in the following cases: *Allen-Bradley Local v. Wisconsin Employment Relations Board*, 315 U. S. 740, 86 L. Ed. 1154, 62 S. Ct. 820 (to enjoin mass picketing, threats of bodily injury and property damage to employees, obstruction of streets and public roads); *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board*, 336 U. S. 301, 93 L. Ed. 691, 69 S. Ct. 584 (allowed state to forbid enforcement of a maintenance-of-membership clause in a contract between employer and union); and *United Constr. Workers v. Laburnum Constr. Corp.*, 347 U. S. 656, 98 L. Ed. 1025, 74 S. Ct. 833 (action in common-law tort for damages). As evidence that the supreme court has recognized that the areas that have been pre-empted by the Federal act and thereby withdrawn from state power are still undetermined, the court, in *Amalgamated Clothing Workers of America v. Richman Bros. Co.*, 348 U. S. 511, 99 L. Ed. 600, 75 S. Ct. 452, stated:

"Insofar as a penumbral region must remain between state and federal authority touching industrial relations until finally clarified by definitive rulings here or further legislation by Congress, state litigation must, in view of § 2283, be allowed to run its course, including the ultimate reviewing power in this Court."

Appellants rely on *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (A.F.L.)*, 346 U. S. 485, 98 L. Ed. 228, 74 S. Ct. 161. In that case, the union peacefully picketed an interstate trucking company for the purpose of inducing the employees to join the union. Drivers for other carriers refused to cross the picket line, and, as a consequence, the company's business dropped off as much as ninety-five per cent. The Pennsylvania supreme court reversed an injunction ordered by the trial court against picketing, holding that the grievance of the petitioners fell within the jurisdiction of the N. L. R. B. In affirming, the United States supreme court said:

"Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary or appropriate for us to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. The question then is whether the State, through its courts, may adjudge the same controversy and extend its own form of relief.

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. Indeed, Pennsylvania passed a statute the same year as its labor relations Act reciting abuses of the injunction in labor litigations attributable more to procedure and usage than to substantive rules. A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law."

In *United Constr. Workers v. Laburnum Constr. Corp.*, *supra*, agents of the unions demanded that the employees of the company join one of the unions. Upon refusal of the company and of many of its employees, the union agents threatened the company and its employees with violence to such a degree that the company was compelled to abandon its projects in the area where the unions were operating. The company sued in the Virginia state court for damages

and obtained a judgment against the union. The United States supreme court sustained the jurisdiction of the Virginia court and affirmed its judgment, saying:

"Petitioners contend that the Act of 1947 has occupied the labor relations field so completely that no regulatory agency other than the National Labor Relations Board and no court may assert jurisdiction over unfair labor practices as defined by it, unless expressely authorized by Congress to do so. They claim that state courts accordingly are excluded not only from enjoining future unfair labor practices and thus colliding with the Board, as occurred in *Garner v. Teamsters Union*, 346 US 485, but that state courts are excluded also from entertaining common-law tort actions for the recovery of damages caused by such conduct. The latter exclusion is the issue here. In the *Garner* case, Congress had provided a federal administrative remedy, supplemented by judicial procedure for its enforcement, with which the state injunctive procedure conflicted. Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct. We see no substantial reason for reaching such a result. The contrary view is consistent with the language of the Act and there is positive support for it in our decisions and in the legislative history of the Act."

After quoting from the *Garner* case, the court went on to say:

"To the extent that Congress prescribed preventive procedure against unfair labor practices, that case recognized that the Act excluded conflicting state procedure to the same end. To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated. The care we took in the *Garner* case to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived. The primarily private nature of claims for damages under state law also distinguishes them in a measure from the public nature of

the regulation of future labor relations under federal law.

"The Labor Management Relations Act sets up no general compensatory procedure except in such minor supplementary ways as the reinstatement of wrongfully discharged employees with back pay."

Appellants call attention to *Born v. Laube*, 213 F. (2d) 407, wherein the plaintiff was a member of the Teamsters' Union at Anchorage, Alaska. For lack of employment, he obtained work as an ordinary laborer with a construction firm, and the union issued a withdrawal card to him. Later, the company offered him a job as truck or bus driver. The union refused to reinstate him as a member and threatened to call all of its truck drivers off the job if the plaintiff were retained. In consequence, he was removed as a truck driver and put back to work as an ordinary laborer.

Plaintiff sued the trustee of the Anchorage local and the union, setting up two causes of action. By the first cause he sought reinstatement in the union, and by his second he sought a money judgment for loss of earnings and also prayed for exemplary damages. The trial court dismissed the action on the ground that the subject matter was within the exclusive jurisdiction of the N. L. R. B. This judgment was affirmed by the circuit court of appeals.

Subsequently, the *Laburnum* decision was handed down, and Born petitioned for rehearing on the strength of that decision. The petition was denied (*Born v. Laube*, 214 F. (2d) 349), the court being of the opinion that the *Laburnum* case was distinguishable, inasmuch as the complaining party there, under the act, was wholly without remedy in damages for the tortious conduct of the union, while in the *Born* case the complaining party had available the remedy of reinstatement with back pay. We are likewise of the opinion that the instant case is distinguishable from the *Born* case. Here, the complaining party is not seeking reinstatement in the union with back pay. He is seeking damages for a common-law tort.

Appellants also rely on our decision in *Mahoney v. Sailors' Union of the Pacific*, 45 Wn. (2d) 453, 275 P. (2d) 440, wherein we held that the national labor relations board had

exclusive jurisdiction in an action by a former member against a union, to grant him compensatory damages because of earnings lost by reason of the union's unfair labor practice; and that the state court was without jurisdiction to order his reinstatement in the union with all the rights and privileges of membership in so far as such order was intended as a means of forcing the union to cease such unfair labor practice. There can be no question but that Mahoney, by his action, placed himself squarely within the exclusive jurisdiction of the board. He sought a judgment setting aside an order expelling him from the union, commanding his reinstatement, and awarding damages. See *Mahoney v. Sailors' Union of the Pacific*, 43 Wn. (2d) 874, 264 P. (2d) 1095.

Let us examine the act further with regard to the procedure provided therein. Section 10 (a) provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. . . ."

Subsection (b) provides that whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the board shall have power to issue and cause to be served a complaint stating the charges, and containing a notice of hearing.

Subsection (c) provides:

"The testimony taken by such member, agent, or agency or the Board shall be reduced to writing and filed with the Board. Thereafter, in its discretion, the Board upon notice may take further testimony or hear argument. If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act."

Respondent is not interested in preventing any person from engaging in any unfair labor practice. He is not ask-

ing that he be reinstated in the union or that it be ordered to cease and desist, nor is he interested in back pay, as such. There is no relationship of employer and employee. That is all in the distant past. All he asks for is damages for a common-law tort.

In *Baun v. Lumber & Sawmill Workers Union,* 46 Wn. (2d) 645, 284 P. (2d) 275, an action by a discharged superintendent against a union and its members for having caused the employing company to bring about his discharge, we held that the state court had jurisdiction to entertain a common-law tort action brought by him, saying:

"Further, we put our conclusion that the Washington courts have jurisdiction of the subject matter of this litigation on the still broader base that the traditional jurisdiction of a state court to enforce a common-law tort liability has not been removed, *at least in such a case as the present,* by the labor management relations act, even though the tortious conduct constitutes an unfair labor practice under the act.

"In considering this phase of the jurisdictional question, it is well to note at the outset *what the plaintiff is not asking.*

"He is not asking that any activities of the union or its members, or that any action by the company be restrained or enjoined; he is not asking that he be reinstated in his position, nor is he asking for back pay. He is not claiming that he is or was an employee within the purview of the labor management relations act.

"He accepts as *fait accompli* his discharge as superintendent of the company's mill. He alleges that his discharge was achieved in connection with and by means of an unlawful conspiracy, and that the union and its members, without cause or justification, caused his discharge by a threat to strike. His common-law action for unlawful interference with his employment or for conspiracy to unlawfully interfere with his employment, and his right to damages therefor, differs from any remedy which the national labor relations board has power to provide, and *it does not involve any question of present or future relations between the company and himself, or the company and its other employees.*"

■ We know that the Federal government has preempted the field as to many phases of labor relations, but not

as to all. We cannot find from the act, as interpreted by the supreme court, that it was the intention of Congress to deprive a workman of his time-honored right to sue in his own state court for damages resulting from a common-law tort and to relegate him, for sole relief, to this particular Federal agency.

Under the facts of this case, there is no "resounding collision" between the remedies afforded under the act and in the state court. Under the one, the board shall issue a cease and desist order and *may* order reinstatement, with or without back pay. Under the other, the state court may not enjoin or issue a cease and desist order (except in case of violence), and may not order back pay, but it can award damages for a common-law tort. The relief granted by the board, with the exception of the cease and desist order, is entirely discretionary and is exercised to effectuate the policies of the act and, in particular, to prevent unfair labor practices. The relief granted in a common-law tort action is compensation to a plaintiff for damages sustained by reason of the tort.

■ Where the relief granted under state procedure is so similar to that granted under the act that a conflict ensues between the two, the conflicting state procedure is excluded. Where such relief is not similar to that afforded under the act, there is no conflict between the state and Federal remedies, and the state procedure survives. *United Constr. Workers v. Laburnum Constr. Corp., supra.* Respondent's right to damages, in this case, for a common-law tort, differs from any remedy which the board has power to provide. The state court, therefore, had jurisdiction to entertain the action.

The judgment is affirmed.

HILL, C. J., MALLERY, DONWORTH, and FOSTER, JJ., concur.

WEAVER, J., concurs in the result.

FINLEY, J. (dissenting)—Relief was sought in the state courts by the plaintiff in the case of *Mahoney v. Sailors' Union of the Pacific*, 45 Wn. (2d) 453, 275 P. (2d) 440, and

by plaintiff in the instant case, based upon the theory of the commission of a common-law tort by a labor union; *i.e.*, an unlawful interference with employment or the right thereto. Mr. Mahoney had been expelled from the union. He was not dispatched or referred to employers for employment. He sought reinstatement to union membership and damages for loss of employment, that is, loss of earnings. In the instant case, Mr. Selles was not expelled from the union, but allegedly, among other things, the union did not dispatch or refer him to employers for employment. He sued for interference with his right of employment. Obviously, the practicable determinant as to damages would be loss of earnings.

I can see no distinction in fact or theory between the two cases in relation to the specific question of whether a basis existed in each case for a common-law tort action in the state courts. However, this is not too significant, because, as I see the matter, the crucial questions are (a) whether the cases involved an unfair labor practice under the Taft-Hartley act, and (b) whether jurisdiction of the national labor relations board supersedes jurisdiction of the state courts.

In *Mahoney*, the court stated that the case did involve an unfair labor practice under § 8 (b) (2) of the act; that the labor board had jurisdiction of the alleged discrimination in employment and the matter of loss of earnings, and that the trial court had erred in assuming jurisdiction of this aspect of the controversy and awarding compensatory damages. Incidentally, in the *Mahoney* decision, the court did assert a limited state jurisdiction and held that Mahoney was entitled to reinstatement in the union by an order of the state trial court for the limited purpose of the protection of his property rights in union funds; *i.e.*, burial or funeral benefits.

In the instant case, the majority opinion holds that the case involves unfair labor practices under § 8 (b) (1) and § 8 (b) (2) of the Taft-Hartley act. Without specifically overruling the *Mahoney* case, the majority opinion holds

that the trial court had jurisdiction to *award compensatory damages* to plaintiff Selles, ostensibly for a common-law tort. Identical relief was denied in the *Mahoney* case.

I have some doubt as to the validity of the view expressed by the majority—that the instant case involves an unfair labor practice under § 8 (b) (2) of the Federal act. The basis for such doubt is the fact that Mr. Selles was at all times a member of the union, apparently in good standing; and it does not seem to me that the union requested or coerced any employer to discriminate against Mr. Selles *for the requisite purpose, under § 8 (b) (2) of the act, of encouraging or discouraging him with respect to union membership.*

Now, did any other conduct of the union otherwise constitute an unfair labor practice under the Taft-Hartley act? Allegedly, the union was responsible (a) for breaking up a meeting held by Mr. Selles and other dissident members to discuss critically certain union policies or operations; and allegedly was responsible (b) for Mr. Selles not being dispatched from the hiring hall for employment. In the instant case, Mr. Selles apparently relies upon the latter-mentioned conduct of the union as the basis for his tort claim for damages. In the controversy between Mr. Selles and the union, I think the national labor relations board had jurisdiction, if the conduct of the union under either (a) or (b) above constituted an unfair labor practice.

Considering the present tenuous state of decisional law as to the meaning of the phrase, ". . . concerted activities for . . . mutual aid or protection . . . ," (§ 7 of the act), there is some doubt as to the ultimate legal effect that the Federal courts will give to this language. However, a reasonable reading of the above pertinent language in relation to § 8 (b) (1) of the act resolves any lingering doubt in my mind in favor of the proposition that the alleged conduct of the union—in breaking up the special meeting of Mr. Selles and his associates—constituted an unfair labor practice. In other words, those acts of the union restrained

or coerced Mr. Selles in the exercise of his rights to engage in ". . . concerted activities . . . for the purpose of . . . mutual aid or protection . . ." (§ 7 of the act).

It seems quite significant that, initially, a charge alleging an unfair labor practice was filed with the national labor relations board relative to the difficulties between Mr. Selles and the union; that the board apparently took jurisdiction and commenced an investigation, issued a complaint against the union, and set a date for a hearing on the matter; but that the complaint was then withdrawn by Mr. Selles, and the present lawsuit was instituted.

Given, as indicated above under § 7 of the Taft-Hartley act, an unfair labor practice by the union in the instant case, the decision of the court in the *Mahoney* case should be (a) clearly and explicitly overruled, or (b) it should be followed. As a majority of the court are unwilling to explicitly overrule the *Mahoney* case, I think that the decision therein should be controlling; *i.e.*, that the jurisdiction of the national labor relations board superseded that of the state court, and that the judgment in the instant case should be reversed.

ROSELLINI and OTT, JJ., concur with FINLEY, J.