No. 42,370

B. J. Taylor, *Appellee*, v. Hoisting and Portable Engineers Local Union 101, AFL-CIO, an Unincorporated Labor Organization, *Appellant*.

(368 P. 2d 8)

Opinion filed January 20, 1962.

*John J. Manning*, of Kansas City, Mo., argued the cause, and *Clarence L. King, Jr.*, and *William B. Stokes*, both of Salina, were with him on the briefs for the appellant.

*James P. Mize*, of Salina, argued the cause, and *John H. Lehman, D. V. Romine*, and *William A. Guilfoyle*, all of Abilene, and *C. L. Clark, Tom Lillard, Jr.*, and *James T. Graves*, all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Jackson, J.: Appellee as plaintiff brought this action in the court below seeking the sum of $3,300 actual damages and the further sum of $6,600 as punitive damages from the present appellant Hoisting and Portable Engineers Local Union 101, AFL-CIO, an unincorporated labor organization, and another defendant Parkhill Truck Company, a corporation. Both defendants filed demurrers to the plaintiff's petition which were overruled by the trial court. Whereupon both defendants filed separate appeals. Later, the trucking company dismissed its appeal, and the present appellant the Union remains the sole appellant. We are advised the truck company has received a covenant not to sue and has been dismissed from the case.

The only question in this appeal is on the remaining defendant's demurrer, and that question depends on whether the trial court had jurisdiction over the action for damages. This depends upon

the question of whether the facts alleged in the petition constituted an unfair labor practice under the National Labor Relations Act as amended, 61 Stat. 136, 29 U. S. C. A. § 141, *et seq.*, and whether under the act exclusive jurisdiction was granted to the National Labor Relations Board to deal with such practices.

Turning now to the petition, plaintiff first alleges that he is a duly qualified, trained and experienced operator of caterpillar tractors and other heavy construction equipment, and throughout the petition plaintiff alleges that his work was eminently satisfactory to his employers. The petition then adequately describes the two defendants named in the petition.

Beginning with paragraph No. 4 and continuing through the pleading to the prayer the petition reads as follows:

"4. On June 15, 1960, and subsequently thereto, defendant Parkhill Truck Company was engaged in business within the State of Kansas, as a subcontractor, in hauling to and distributing pipe from its various pipe yards and distribution points, including Herington, Dickinson County, Kansas, along the right-of-way for the construction of a new interstate pipeline, said right-of-way therefor extending from a point near Seagraves, Texas, across the State of Kansas, to a point near Monticello, Wisconsin, with a separate loop to a point near Farmington, Minnesota, a total distance of approximately 2,300 miles.

"5. On the date aforesaid, and until his wrongful discharge hereinafter mentioned, plaintiff was employed as a caterpillar tractor operator by defendant Parkhill Truck Company near Herington, Kansas, in Dickinson County, Kansas, at a wage rate of $2.22 per hour, with time and half for over 40 hours per week, upon the understanding said wage rate would be increased to $3.15 per hour as soon as the operation reached the Morris County, Kansas, line. At said time plaintiff's said employer was performing said subcontract by working out of Herington along said right-of-way from a generally southwest to northeast direction.

"6. Plaintiff is not and was not a member of defendant labor organization while working at his employment aforesaid, but duly notified both his said employer and said defendant labor organization that he was ready and willing to join said defendant labor organization. Plaintiff gave both defendants notice of his willingness to join said union at the time of and during his employment aforesaid.

"7. At all times while plaintiff was employed as aforesaid, he performed each and all of his duties and services as such employee in a careful, proper and entirely workmanlike manner.

"8. On or about June 16, defendants, and each of them, acting concurrently and jointly, knowing the quality and workmanship of plaintiff's services to his said employer in his said employment were entirely satisfactory to his said employer, and although defendants, and each of them, knew of plaintiff's willingness to join said Union, and although defendant, and each of them, knew of plaintiffs' rights under Article 15, Section 12, of the Con-

stitution of the State of Kansas, defendants did willfully, intentionally and oppressively refuse to permit plaintiff to join said union, and did willfully, intentionally and oppressively cause plaintiff to be discharged from his said employment because plaintiff was not a member of said union, and did willfully, intentionally and in complete disregard of plaintiff's rights cause plaintiff's said job and employment to be given to one Virgil Sheete, a union member.

"9. As a direct and proximate result of the willful, intentional and oppressive tortious acts of defendants, and each of them, aforesaid, plaintiff was deprived of his right to retain his said employment because of his nonmembership in said defendant labor organization. Said cause of action arose in Dickinson County, Kansas.

"10. As a direct and proximate result of defendants' willful, intentional and oppressive tortious conduct, aforesaid, plaintiff has lost wages, sustained physical and mental suffering and humiliation, and incurred expense and inconvenience in trying to locate other employment to his actual damages in the amount of $3,300.00, and is further entitled to be awarded punitive damages in the sum of $6,600.00."

The prayer requests damages in the amounts set out above. It requires no citation of authority to state that the demurrer filed by the Union admits the truth of all facts well pleaded.

There can be no question that it has long been the law of Kansas that one who willfully and intentionally intermeddles in the contract rights of another with the result of the loss of contractual rights possessed by one party may be sued in tort for the resulting damages. (*Vaught v. Pettyjohn & Co.*, 104 Kan. 174, 178 Pac. 623; *Nulty v. Lumber and Grain Co.*, 116 Kan. 446, 227 Pac. 254; *Hilton v. Sheridan Coal Co.*, 132 Kan. 525, 297 Pac. 413; *Russell v. Bovard*, 153 Kan. 729, p. 735, 113 P. 2d 1064; and see Restatement, Torts § 766.)

It will be noted in paragraph No. 8 of the petition quoted above, that plaintiff seems to base his right upon the provisions of Article 15, Section 12 of the Kansas state constitution. This section commonly known as the "right to work amendment" was adopted by the people at the general election of 1958. It would seem to us that plaintiff may still place his right to sue upon the common law of the state, and that section of the constitution merely provides that the defendant Union has no right to intermeddle in plaintiff's contractual right to work. That is, the union is forbidden and has no right to urge plaintiff's dismissal from his job because he is not a member of the union.

In *Higgins v. Cardinal Manufacturing Co.*, 188 Kan. 11, 360 P. 2d 456, cert. denied ____ U. S. ____, 7 L. Ed. 2d 32, 82 S. Ct. 51,

this court held that the above constitutional amendment was self-executory and needed no further act of the legislature before becoming effective. Thus the state constitution fully protects plaintiff's right to bring his common law action for damages.

It may be noticed in passing that "right to work laws" commonly allow or provide that the party injured may resort to an action for damages under the common law. The Virginia statute would seem to provide specifically that one so injured might bring an action for damages, see *Finney v. Hawkins*, 189 Va. 878, 54 S. E. 2d 872.

In *Willard v. Huffman*, 247 N. C. 523, 101 S. E. 2d 373, a union employee sued his employer for damages alleging discrimination against union men. In *Dukes v. Local Union No. 437, et al.*, 191 Tenn. 495, 235 S. W. 2d 7, 26 A. L. R. 2d 1223, the Tennessee court had a question of union interference with plaintiff's right to work although no specific statute seems to have been involved. The annotation following the case in A. L. R. treats generally of the common law right to relief for tortious interference with contractual rights.

The sole argument of the defendant union in this case is that the National Labor Relations Act has pre-empted from the courts of Kansas all jurisdiction in a case such as this and placed all relief before the National Labor Relations Board.

It will be readily apparent that there was no labor dispute between the employer and the union in the case at bar. Plaintiff sued both the employer and the union in this case, and may well have obtained a settlement from the employer.

Defendant Union asserts that the alleged facts in the petition constitute a clear unfair labor practice upon the part of the union under section 8 (*b*) (2) of the National Labor Relations Act (29 U. S. C. A. § 158 [*b*] [2]), and especially relies upon the case of *San Diego Unions v. Garmon*, 359 U. S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773.

We have studied that case carefully and are of the opinion that its decision does not control the instant case. We note that the "second Garmon case" appears to be the first instance in which the Supreme Court of the United States set aside a judgment for damages when the National Labor Relations Board would have had jurisdiction over the case only because of an unfair labor practice. It may be noted that in the "first Garmon case," *San Diego Unions v. Garmon*, 353 U. S. 26, 1 L. Ed. 2d 618, 77 S. Ct.

607, the court had observed that the California court seemed to be following the federal law, but had returned the case to the state court for a further expression as to the basis for the state court's judgment for damages. Attention is also directed to the special concurring opinion of Mr. Justice Harlan in which three other members of the court joined.

In the case at bar there can be no question that the action is maintained under the common law of Kansas aided and fortified by the recent "right to work" constitutional amendment. Actually, there is little that the National Labor Board could give to this plaintiff. The job was one of temporary character and has long since been completed; the board could hardly restore plaintiff to his job. It might restore certain wages, but that is only a small part of plaintiff's damages alleged in the petition *supra*. He is entitled under state law to attempt to prove these damages.

Defendant would distinguish all of the other cases in which the courts have allowed an action for damages, although the case might have been brought before the National Labor Relations Board, upon the ground that they involved a breach of the peace. Attention is directed to *United Workers v. Laburnum Corp.*, 347 U. S. 656, 98 L. Ed. 1025, S. Ct. 833; *Automobile Workers v. Russell*, 356 U. S. 634, 2 L. Ed. 2d 1030, 78 S. Ct. 932; *Machinists v. Gonzales*, 356 U. S. 617, 2 L. Ed. 2d 1018, 78 S. Ct. 923; *Kamper v. Fairbanks Local 1234, etc.*, 258 F. 2d 791; *Benz v. Compania Naviera, Hidalgo, S. A.*, 233 F. 2d 62; and *Selles v. Local 174, etc.*, 50 Wn. 2d 660, 314 P. 2d 456, cert. denied 356 U. S. 975, 78 S. Ct. 1134, 2 L. Ed. 2d 1149, rehearing denied, 358 U. S. 860, 79 S. Ct. 14, 3 L. Ed. 2d 95.

The defendant argues that in all of the above cases, the state court was allowed to retain jurisdiction because a breach of the peace was involved. While in some cases that may have been true, we fail to find that it was true in all of the cases. In *Machinists v. Gonzales*, supra, the syllabus in the United States report reads as follows:

"Claiming to have been expelled from membership in an international union and its local union in violation of his rights under the constitutions and by-laws of the unions, a former union member sued in a California State Court for restoration of his membership and for damages for his illegal expulsion. The Court entered judgment ordering his reinstatement and awarding him damages for lost wages and physical and mental suffering. *Held:* The National Labor Relations Act as amended, does not exclude this exercise of state power, and the judgment is affirmed. Pp. 618-623.

"(*a*) The protection of union members in their contractual rights as members has not been undertaken by federal law, and state power to order reinstatement in a union is not precluded by the fact that the union's conduct may also involve an unfair labor practice and there is a remote possibility of conflict with enforcement of national policy by the National Labor Relations Board. Pp. 618-620.

"(*b*) Likewise, a state court can award damages for breach of the contract by wrongful ouster, since, even if the Board could award back pay, it could not compensate for other injuries suffered by an ousted union member, and the danger of conflict with federal policy is no greater than from an order of reinstatement. Pp. 620-623.

"142 Cal. App. 2d 207, 298 P. 2d 92, affirmed."

In the Selles case, *supra,* decided by the supreme court of Washington sitting *en banc,* part of the headnotes in the Washington report read as follows:

"[2] Where a union, through its officers, controlled employment in a member's field of work and without their approval no work could be obtained, their refusal to dispatch him for work in retaliation for the part he played in organizing a meeting to discuss grievances constitutes "discrimination in regard to hire," which is an unfair labor practice under § 8 (*b*) (2) of the labor management relations act.

"[3] A controversy between a union member and his union is within the purview of the labor management relations act, where it appears that the member took part in organizing a meeting to discuss grievances respecting the conduct of union affairs, and in retaliation the union officers refused to dispatch him for work, resulting in his being without work for a year except for two short periods.

"[4] Although the Federal government, through the labor management relations act, has pre-empted the field as to many phases of labor relations, it was not the intention of Congress to deprive a workman of his right to sue in his own state court for damages resulting from a common-law tort and to relegate him for sole relief to the national labor relations board."

The facts of the above two cases are quite similar to the case at bar. It must be noted that plaintiff was agreeable to the proposition of joining the union and offered to do so; that he was wrongfully excluded and further that he was intentionally discriminated against by both of the named defendants, and that he brings the present action at common law in tort buttressed by the "right to work amendment" of the state constitution for damages suffered because of the intentional discrimination on the part of the two defendants.

Section 14 (*b*) of the National Labor Relations Act (29 U. S. C. A. § 164 [*b*]) reads:

"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as

a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

The Kansas courts should have jurisdiction over the present case at bar as a means of enforcing the state constitution if for no other reason. (*Plumbers Union v. Graham*, 345 U. S. 192, 97 L. Ed. 946, 73 S. Ct. 585.) We are cognizant of the fact that the National Labor Relations Act was not involved in the Graham case, but the facts indicate the importance placed upon a state's right to control its own policy in this field.

We believe the trial court was correct in overruling the demurrer based upon its jurisdiction to entertain this action. Therefore, that order must be affirmed. It is hereby so ordered.