No. 51,179

J IMMY R. C OLLIER, d/b/a S ERVICE AND M AINTENANCE C ONSTRUCTION
C OMPANY, *Appellant,* v. O PERATING E NGINEERS L OCAL U NION N O.
101, and C ONSTRUCTION AND G ENERAL L ABORERS' L OCAL U NION
No. 1290, *Appellees.*

(612 P.2d 150)

Opinion filed June 14, 1980.

*Laurence M. Jarvis,* of Laurence M. Jarvis, Chartered, of Kansas City, argued the cause and was on the brief for the appellant.

*Robert S. Fousek,* of Kansas City, Missouri, argued the cause, and *John J. Manning,* of Kansas City, Missouri, and *Timothy Evans,* of Kansas City, were with him on the brief for Operating Engineers Local No. 101, appellee.

*Richard B. Thompson,* of Blake & Uhlig, of Kansas City, argued the cause and was on the brief for the Construction and General Laborers' Local Union No. 1290, appellee.

The opinion of the court was delivered by

FROMME, J.: The plaintiff Jimmy R. Collier appeals from an order of the district court dismissing his petition for damages with prejudice. The court reasoned that it was without subject matter jurisdiction because the controversy concerned matters arguably protected by the Labor Management Relations Act of 1947, or arguably prohibited by said act.

The plaintiff filed the cause of action for damages against two local labor unions for intentionally, willfully, and maliciously interfering with the plaintiff in the performance of a contract and causing Owens-Corning Fiberglas Corporation (Owens-Corning) to terminate said contract with plaintiff. Plaintiff alleged the acts of the unions constituted tortious interference with an existing contract to build a parking lot on the premises of Owens-Corning. It was further alleged that as a result of defendants' wrongful acts they intentionally procured a breach of said contract. Both compensatory and punitive damages were sought for loss of business and loss of business profits.

Construction and General Laborers' Local Union No. 1290 (Union No. 1290) and Operating Engineers Local Union No. 101 (Union No. 101) filed separate motions to dismiss which were treated as motions for summary judgment in that both the plaintiff and the labor unions filed affidavits supplementing the allegations in the petition.

The following facts are gleaned from the affidavit filed by Collier. On April 5, 1978, he entered into a written contract with Owens-Corning to provide labor, materials and equipment necessary to prepare a parking lot on Owens-Corning's premises. On May 19, 1978, a representative of Union No. 1290 came to the job site where his employees were working and asked if Collier was a

union contractor. Collier said he was not. He was then asked if he was going to become a union contractor. He again advised that he was not. On May 26, 1978, the representative of Union No. 1290 returned, accompanied by a representative of Union No. 101. They came on the lot and threatened to put a "banner" on the job. Collier told them not to interfere with his contract and reminded them of the Kansas right to work law. Collier had no contract with either union. On May 30, 1978, members of Union No. 1290 placed a picket at the job site and Owens-Corning then terminated its contract with Collier. Owens-Corning advised Collier that if the picket remained on the premises Owens-Corning employees would honor the picket and the plant would have to be shut down. It was better for Owens-Corning to terminate the contract and get a union contractor to finish the parking lot. Collier had performed at least fifty contracts for Owens-Corning. Collier had also received requests to bid on jobs of Owens-Corning on an average of once a week for nine or ten years. Ever since the incident ending with the picketing, Collier has had no correspondence or requests for bids from Owens-Corning.

The unions, in support of the motions to dismiss, filed a memorandum arguing that under the doctrine of federal preemption the petition alleges conduct which is within the exclusive jurisdiction of the National Labor Relations Board (NLRB). In addition they filed an affidavit by the president of Union No. 1290 in which he stated he had received information that Collier was performing construction work at the Owens-Corning facility, that Collier was paying wages below the prevailing area standard for workers in the laborer's trade, and that he instructed his people to establish an area standards picket at the Owens-Corning facility to notify members of the public that the unions' established area working conditions were being broken down by Collier. The picket banner read "Jimmy R. Collier - Breaking Down Established Working Conditions - Laborers Local 1290, AFL-CIO." Collier was no longer retained on the job. The picket banner was removed. The union president stated he and the union did not procure or attempt to procure the breach of the contract between Collier and Owens-Corning. This latter statement appears to be in direct conflict with the statements in the petition and in the affidavit of Collier.

We are confronted at the outset with a question of procedure.

The unions filed no pleadings except those designated as motions to dismiss under K.S.A. 60-212(b)(6). They alleged lack of subject matter jurisdiction and federal pre-emption of subject matter. However, an affidavit was filed in support of the motions setting forth facts showing at least one major factual disagreement with Collier's petition, *i.e.*, the purpose or object of the picketing. K.S.A. 60-212(b)(6) provides for a dismissal for "failure to state a claim upon which relief can be granted." This statute further provides in pertinent part:

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by K.S.A. 60-256."

When the status of a motion under K.S.A. 60-212(b)(6) has been converted to that of a motion for summary judgment, reasonable opportunity to present all material pertinent to such a motion should be given. The parties have lodged no objection by reason of this conversion and the plaintiff did respond by affidavit to the motion as if it were one for summary judgment. Under the circumstances we see no prejudice from this conversion. Both this court and the federal courts have recognized and permitted conversion of a motion to dismiss into a motion for summary judgment. *Gardner v. McDowell,* 202 Kan. 705, 706, 451 P.2d 501 (1969); 5 Wright & Miller, Federal Practice & Procedure: Civil § 1366 (1969).

Summary judgment should not be entered where there are disputed issues of material fact. *Mildfelt v. Lair,* 221 Kan. 557, 559, 561 P.2d 805 (1977). An appellate court in examining the validity of a motion for summary judgment should read the record in the light most favorable to the party who defended against the motion. It should accept such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. *Woods v. Cessna Aircraft Co.,* 220 Kan. 479, 481, 553 P.2d 900 (1976); *Nordstrom v. Miller,* 227 Kan. 59, 64, 605 P.2d 545 (1980).

For the purposes of this appeal we must accept plaintiff's allegations that the unions intentionally and maliciously placed the picket and banner on the Owens-Corning premises for the purpose of interfering with the existing contract and for the

further purpose of procuring a breach of that contract between Collier and Owens-Corning.

The unions call this court's attention to the doctrine of federal pre-emption under the United States Constitution and point out the United States Supreme Court acknowledges that the grant of power to Congress to regulate commerce necessarily excludes concurrent powers in the states. They point out that the National Labor Relations Board (NLRB) was created by Congress under the forerunner of the Labor Management Relations Act of 1947, and. the board has for its purpose the settlement of disputes affecting interstate commerce arising between labor and management.

The unions cite many federal cases on the subject of federal pre-emption such as *Guss v. Utah Labor Board*, 353 U.S. 1, 1 L.Ed.2d 601, 77 S.Ct. 598 (1957). In the latter case a state labor relations board acted on charges of unfair labor practices against an employer whose business affected interstate commerce. On appeal to the United States Supreme Court it was held the state labor relations board had no power to enjoin an employer, whose business affects interstate commerce, from engaging in unfair labor practices prohibited by the federal act. In *Guss* it is further stated:

"[T]he States' power to act with respect to matters of local concern is not necessarily superseded. But in each case the question is one of congressional intent." 353 U.S. at 10.

It is generally understood because of the doctrine of federal pre-emption state courts have no jurisdiction to entertain actions arising from labor combat except under special circumstances. See *Reece Shirley & Ron's, Inc. v. Retail Employees Union & Local 782*, 225 Kan. 470, 592 P.2d 433 (1979); *Inland Industries, Inc. v. Teamsters & Chauffeurs Local Union*, 209 Kan. 349, 496 P.2d 1327 (1972); *Cooperative Refinery Ass'n. v. Williams*, 185 Kan. 410, 345 P.2d 709 (1959); *Kaw Paving Co. v. International Union of Operating Engineers*, 178 Kan. 467, 290 P.2d 110 (1955). In the above cases injunctions were sought in the state court and jurisdiction to entertain the actions was denied.

However, we note the following provisions of the Labor Management Relations Act of 1947:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or

conduct defined as an unfair labor practice in section 158(b)(4) of this title [29 U.S.C. - Labor].

"(b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, *or in any other court having jurisdiction of the parties,* and shall recover the damages by him sustained and the cost of the suit." 29 U.S.C. § 187. Emphasis supplied.

The foregoing provision is generally referred to as § 303 of the Labor Management Relations Act.

None of the parties have favored us with this citation, and no discussion of the section appears in either the trial court's transcript or in the appeal briefs. Subsection (a) makes it unlawful for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of Title 29 U.S.C. - Labor. Subsection (b) authorizes suit in any district court of the United States, "or in any other court having jurisdiction of the parties." It authorizes a suit for damages. We specifically note the action is limited to damages and nothing is said about relief by way of injunction. This section of the statute shows clear congressional intent to permit such a damage action in state and federal courts.

In *Teamsters Union v. Morton,* 377 U.S. 252, 12 L.Ed.2d 280, 84 S.Ct. 1253 (1964), a suit for damages was permitted in the United States District Court for the Northern District of Ohio. The factual situation was almost identical to the alleged facts of our present case, except the action was brought in a federal court. (Under our reading of the statute this difference appears immaterial.) During a peaceful strike against a trucking contractor whose employees the union represented, a teamsters' union encouraged the employees of one of the trucking contractor's customers to force their employer to cease doing business with the contractor, and did persuade the management of another customer to refrain from doing business with the trucking contractor. The contractor sued the union. On appeal to the United States Supreme Court is was held the union was liable for damages for encouraging the employees of the first customer to force their employer to cease dealing with the contractor. Such action by the union violated § 303 of the Labor Management Relations Act. In *Morton* the high court said:

"Section 303(b) of the Labor Management Relations Act expressly authorizes

state and federal courts to award damages to any person injured by certain secondary boycott activities described in § 303(a). The type of conduct to be made the subject of a private damage action was considered by Congress, and § 303(a) comprehensively and with great particularity 'describes and condemns specific union conduct directed to specific objectives.' *Carpenters Local 1976 v. Labor Board*, 357 U.S. 93, 98. In selecting which forms of economic pressure should be prohibited by § 303, Congress struck the 'balance . . . between the uncontrolled power of management and labor to further their respective interests.' *id.*, at 100, by 'preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and [by] shielding unoffending employers and others from pressures in controversies not their own.' *Labor Board v. Denver Bldg. & Construction Trades Council*, 341 U.S. 675, 692." 377 U.S. at 258-59.

The Chief Justice of the Supreme Court of Idaho, speaking on jurisdiction in a labor combat case in *Simpkins v. Southwestern Idaho Paint. Dist. Co. No. 57*, 95 Idaho 165, 505 P.2d 313 (1973), said:

"Section 303 [of Labor Management Relations Act of 1947] embodies a 'clear exception to the exclusive jurisdiction of the NLRB', and grants the state courts primary jurisdiction concurrent with federal courts to decide suits for damages when the cause of action is grounded in § 8(b)(4)." p. 171.

In *Simpkins* the trial court had dismissed the case for lack of primary jurisdiction. On appeal the case was reversed and remanded to determine whether the union picketing constituted proscribed secondary activity or protected primary activity. If it was primary activity it was not an unfair labor practice and no action would lie. If, however, it constituted secondary activity it was proscribed and damages were recoverable in the state court.

Considering the Labor Management Relations Act of 1947, 29 U.S.C. § 158, we find a listing of unfair labor practices *by an employer* under subsection (a). Under (b) are listed unfair labor practices *by a labor organization or its agents*. Among such proscribed practices is:

"(b) It shall be an unfair labor practice for a labor organization or its agents —

. . . .

"(4) . . . (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is —

. . . .

"(B) *forcing or requiring any person* to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or *to cease doing* business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been

certified as the representative of such employees under the provisions of section 159 of this title: . . ." Emphasis supplied. 29 U.S.C. § 158(b)(4)(ii)(B).

29 U.S.C. § 158(b)(4)(ii)(B) proscribes certain union activities which are generally referred to as secondary boycotts. In an annotation in 12 L.Ed.2d 1141, § 2, pp. 1148-49, the author states:

"Generally speaking, proscribed union activities lose their primary nature and become prohibited secondary activities actionable under § 303 where they take place at a third person's worksite, since in such a case the third person rather than the employer is the object of the union pressure. Accordingly, unions have been held liable under § 303 not only for activities at a third person's mine, factory, or other worksite, and activities on the open highway against a third person's truckdrivers, but also for activities at a worksite jointly that of the employer and a third person.

. . . .

"If a union adopts any of the aforementioned proscribed means to accomplish any of the aforementioned prohibited objects, anyone injured in his business or property thereby — including primary employers and their employees as well as neutrals to the dispute — may recover damages therefor, as long as his damage is direct and not merely incidental or remote. Recovery is limited to actual, compensatory damages 'and the cost of the suit,' and no punitive damages may be allowed. Attorneys' fees paid or incurred in the prosecution of other suits may be recovered as a part of the damages, but attorneys' fees paid or incurred in prosecuting the § 303 suit are not recoverable.

"Only unions, and not union members or employers, may be held liable under § 303. According to the lower federal courts, the common-law rules of agency determine for what acts of individuals a union may be held liable under § 303.

"Federal District Courts, including those sitting in territories, have jurisdiction of damage suits brought under § 303, regardless of the amount in controversy or lack of diversity of citizenship between the parties. They have no jurisdiction of suits brought under § 303 for injunctive relief, except where damages are also sought. State courts also have jurisdiction of suits brought under § 303, but federal law governs in § 303 suits, even if they are brought in state courts. Federal law governing limitations and laches has been held applicable in § 303 suits, even though no federal statute of limitations applies in such actions."

The Labor Management Relations Act of 1947, 29 U.S.C. § 187(b), expressly provides a clear exception to the exclusive jurisdiction of the NLRB, and grants the state courts primary jurisdiction concurrent with federal courts to decide claims for damages when the cause of action is grounded on a violation of 29 U.S.C. 158(b)(4). For a violation of 29 U.S.C. § 158(b)(4), condemning secondary boycotts, double remedy is available to the aggrieved party, one being an administrative remedy generally available by bringing the dispute to the National Labor

Relations Board, and the other a remedy for damages under 29 U.S.C. § 187(b), and these remedies are independent of one another. *East Photo Lab v. Blueprint Photostat, etc., Local 249,* 71 N.J. Super 385, 177 A.2d 69 (1961); 48A Am. Jur. 2d, Labor and Labor Relations § 1688, p. 166. An exhaustive annotation on the Validity and Construction of § 303 of Labor Management Relations Act (29 USC § 187) Giving Right of Action Against Union for Inducing Strikes and Secondary Boycotts appears in 7 A.L.R. Fed. 767 through 839.

In *Gulf Coast Bldg. & S. Co. v. International Bro. of Elec. Wkrs.,* 428 F.2d 121 (5th Cir. 1970), 7 A.L.R. Fed. 756, the Fifth Circuit holds that a cause of action will lie under § 303 of the act (29 U.S.C. § 187), when a union pickets a construction site with signs alleging the nonunion electrical subcontractor was undermining area standards. The court stated if the object of the picketing was to force Gulf Electric (the subcontractor) to pay area standards, then the union's actions did not constitute a secondary boycott. If, however, the union had the purpose of forcing Gulf Coast (the general contractor) to sever its ties with Gulf Electric, and its picketing was designed to accomplish that purpose, its actions amounted to a secondary boycott in violation of 29 U.S.C. § 158(b)(4)(i) and (ii)(B).

So in the present case if the purpose of the picketing was to notify the public of the fact that Collier was breaking down established area standards and working conditions in the laborers' trade, the union and its members were merely exercising first amendment rights of freedom of speech and such activity is clearly protected primary activity which cannot be the basis for the action. *N. L. R. B. v. International Hod Carriers, Etc.,* 285 F.2d 397, 404 (8th Cir. 1960). If, however, the union, its officers and members had for their purpose the forcing of Owens-Corning to terminate its contract with Collier and sever future association with his company such activity would appear to be in the category of a secondary boycott and in violation of 29 U.S.C. § 158(b). *Gulf Coast Bldg. & S. Co. v. International Bro. of Elec. Wkrs.,* 428 F.2d 121.

Under the unions' view of the facts in this case, they contend the picketing was clearly protected primary activity. Collier vigorously argues the picketing had for its purpose the termination of the contract and the severing of future business between

Collier and Owens-Corning, a prohibited secondary boycott. Therefore, there exists between these parties a genuine issue as to a material fact, and summary judgment was improperly entered in favor of defendants.

Two other matters appear to need some comment to assist the court and parties in a trial of the case. We note that plaintiff has included a prayer for both compensatory and punitive damages in the petition filed in the case. Punitive damages may not be recovered for § 303 violations of the Labor Management Relations Act in an action brought under 29 U.S.C. § 187(b). *Teamsters Union v. Morton,* 377 U.S. 252. In *Morton* it was determined that punitive damages for violations of 29 U.S.C. § 187 conflict with the congressional judgment, reflected both in the language of the federal statute and in its legislative history; that recovery for an employer's business losses caused by a union's peaceful secondary activities proscribed by 29 U.S.C. § 158(b) should be limited to actual compensatory damages. For additional cases denying punitive damages in such actions see 29 U.S.C.S. § 187, n. 27, pp. 337-38.

A final comment concerns the plaintiff's petition. It contains no reference to 29 U.S.C. § 187(b) and was drawn in the form of a claim for damages against one who willfully and intentionally intermeddles in the contract rights of another with a resultant loss of contractual rights. Plaintiff's memorandum in opposition to defendants' motions to dismiss is largely based on *Taylor v. Local Union 101,* 189 Kan. 137, 368 P.2d.8 (1962). In *Taylor* it is held the state court possessed jurisdiction to try the case based on the common law of the state and Article 15, Section 12 of the Kansas Constitution despite the fact that the alleged action of the union giving rise to the claim may have constituted an unfair labor practice.

In *Teamsters Union v. Morton,* 377 U.S. at 261, it is said:

"In short, this is in an area 'of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law.' *Sola Electric Co. v. Jefferson Electric Co.,* 317 U.S. 173, 176. Accordingly, we hold that since state law has been displaced by § 303 in private damage actions based on peaceful union secondary activities, the District Court in this case was without authority to award punitive damages."

It would appear from the foregoing that using local common law as a basis for a damage action might well be impermissible. It

would certainly cause difficulties to follow what was said in *Taylor* because there we indicate an unfair labor practice under 29 U.S.C. § 158(b) does not necessarily have to be proven. The cases under 29 U.S.C. § 187(b) hold otherwise.

We do not believe the plaintiff in the present case should be precluded from proceeding with a cause of action under 29 U.S.C. § 187(b) in this case merely because he either overlooked or failed to cite 29 U.S.C. § 187 as a basis for his action. His claim for damages depends upon proof of an unfair labor practice under 29 U.S.C. § 158(b), and the action is one recognized under 29 U.S.C. § 187(b).

A proper pleading need only contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which the pleader deems himself or herself entitled. All pleadings shall be so construed as to do substantial justice. K.S.A. 60-208(*a*)and (*f*).

In view of the foregoing, issues raised concerning insufficient notice of hearings become immaterial and need not be decided.

The judgment is reversed and the case is remanded for further proceedings.