**GULF COAST BUILDING & SUPPLY COMPANY, Inc., Plaintiff-Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 480, AFL–CIO, Defendant-Appellant.**

No. 28530.

United States Court of Appeals, Fifth Circuit.
June 19, 1970.

Dixon L. Pyles, Jackson, Miss., for appellant.

E. C. Ward, Natchez, Miss., Willis C. Darby, Jr., Mobile, Ala., for appellee.

Before BELL, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Gulf Coast Building & Supply Company, Inc. (Gulf Coast) commenced this action under section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, to recover damages from International Brotherhood of Electrical Workers, Local No. 480, AFL–CIO (Local 480). Gulf Coast was engaged as the general contractor for the construction of a shopping center. In this action it complained of the damages sustained by it as a result of picketing at the jobsite by Local 480. Gulf Coast alleged that the picketing violated the secondary-boycott section of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (i) and (ii) (B), because its object was to force Gulf Coast to sever its contract with a nonunion electrical subcontractor and hire a union subcontractor instead. The jury returned a general verdict in favor of Gulf Coast in the amount of $38,349.78. The District Judge denied Local 480's motion for a judgment notwithstanding the verdict or a new trial, and the union appeals. Local 480 contends that the evidence does not support the jury's finding that it engaged in a secondary boycott or the jury's award of damages to Gulf Coast. Also, it argues that the jury was improperly constituted and that the District Court's jury instructions were erroneous. We affirm.

Gulf Coast, as general contractor, began construction of the Tracetown Shopping Center (Tracetown Center) in Natchez, Mississippi, in December 1966. On January 20, 1967, Erickson, the Business Manager of Local 480, wrote a letter to St. John, the Project Manager of Gulf Coast at the Tracetown Center site, stating that Local 480 would appreciate Gulf Coast's "careful consideration of awarding subcontracts to qualified

contractors who abide by the State and Federal approved apprenticeship training program and pay the prevailing wage scale in this area [Natchez]." A list of "electrical contractors who have agreements with Local 480" was enclosed. Gulf Coast awarded the plumbing work to Wood Mechanical of Jackson, Mississippi, and the electrical work to Gulf Electric Construction Company (Gulf Electric) of Crestview, Florida. Gulf Electric was not a union employer, having no agreement with Local 480. At the Tracetown Center site Gulf Coast employed mechanics and laborers from the Natchez area. Some of these employees were obtained through the Carpenter's Local, the Masonry Local, and the Laborer's Local.

On February 28, 1967, Local 480 began picketing the single entrance gate to the construction site. The union claimed that its dispute was solely with Gulf Electric, the dispute being that Gulf Electric did not pay area wage scales or follow area working standards adhered to by union electrical employers, thus undermining those scales and standards. According to the union, the sole purpose of the picketing was to pressure Gulf Electric into meeting the area scales and standards. Local 480, however, did not contact Gulf Electric before the picketing began. The pickets carried signs consistent with the union's avowed purpose of picketing at the Tracetown Center site. The pickets were instructed not to say anything to persons inquiring about the picket line, but to have them read the signs.

Before establishing the picket line, Erickson informed several local unions affiliated with the Building Trades Council that Local 480 was going to picket at the Tracetown Center. Erickson knew that it was the general policy of unions affiliated with the Council not to cross picket lines, and he hoped that their members would not cross Local 480's line. Local 480 commenced picketing in the mornings before Gulf Coast people were due to arrive so that they would recognize the line and stay off the job.

On February 28, the day picketing began, Gulf Coast's Project Manager questioned Erickson about the cause of the picketing. Erickson, mentioning the letter he had written on January 20, told the Project Manager to read the picket sign. On the same day, Worley, a vice president of Gulf Coast, met Erickson by chance and asked him why Local 480 was picketing. Erickson replied that he had told the Project Manager to read the sign, that he did not want to discuss the matter with Worley, and that his lawyer would contact Worley. Later, Erickson's lawyer informed Worley and the president of Gulf Coast that "you people are undermining us and we're protesting."

The picketing lasted, with one short break, until June 23, 1967, when it was voluntarily stopped. Until March 14, the pickets patrolled at the single entrance to the construction site. On that date Gulf Coast constructed a second entrance for use by everyone but Gulf Electric and persons doing business with Gulf Electric, who continued to use the original gate. Local 480 kept an account of persons using the new gate, and the pickets continued to patrol the original gate, which was eliminated in June. During the course of the picketing, some employees of Gulf Coast and of subcontractors other than Gulf Electric, as well as persons delivering supplies to the site, refused to cross the picket line.

The break in picketing occurred after Worley, on the morning of March 22, informed Erickson of a proposal to have Wood Mechanical, a union employer, employ the electrical labor. At Worley's request, Erickson removed the line. The proposal was not effected, however, and the picketing resumed on March 23. Also on March 23, at a meeting arranged by Worley among himself, Erickson, and a representative of Gulf Electric, Gulf Coast and Gulf Electric offered to arrange the payment of Local 480's prevailing wage scale and compliance with the prevailing working standards. Erickson stated that he would have to discuss the matter with his lawyer. He was not heard from again.

The picket line had these effects on Gulf Coast's operations at the Tracetown Center site: The job was shut down from February 28 through March 2, except for electrical work being performed by Gulf Electric. Gulf Coast was unable to obtain local replacements. It did obtain masons from New Orleans, Mobile, and Pensacola, but no plumbers, except for the owners of Wood Mechanical, reported to work from February 28 until March 15. Gulf Coast rented equipment to batch concrete, but, except for deliveries made on March 22, concrete was not delivered to the site until March 31. In addition, Gulf Coast added further direct supervision, assigned administrative personnel, took over the work of subcontractors, rented additional equipment, and worked overtime to make up for the time lost because of the picketing. As a result of the lack of progress made toward completion of the shopping center, the construction lender refused to disburse loan funds until Gulf Coast obtained a completion bond, which cost $10,750. Gulf Coast incurred and paid attorney's fees and expenses amounting to $4,750.85 to effect resumption of work and employed guards for the protection of its property and equipment at the jobsite. Gulf Coast's accountant, under the supervision and with the assistance of Worley and Gulf Coast's president, prepared a schedule of some of the expenses incurred by Gulf Coast in attempting to overcome the effects of the picketing. The contract price for construction of Tracetown Center was $1,250,000. The actual cost of construction was $1,296,000, or $46,000 more. Most of the shopping center was completed by September 1, 1967, the scheduled completion date. This lawsuit followed.

We conclude that the judgment of the District Court must be affirmed. There is sufficient evidence in the record to support the jury's finding that Local 480's actions amounted to a secondary boycott in violation of National Labor Relations Act § 8(b) (4) (i) and (ii) (B), 29 U.S.C. § 158(b) (4) (i) and (ii)

(B). See International Bro. of Elec. Wkrs., Local 480 v. N. L. R. B., 1969, 134 U.S.App.D.C. 178, 413 F.2d 1085, *enforcing* 172 N.L.R.B. No. 64 (June 26, 1968). There is also ample evidence to support the jury's award of damages. See Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Sheet Metal Wkrs. Int. Ass'n, Loc. 223, AFL-CIO v. Atlas Sheet Metal Co., 5 Cir., 1967, 384 F.2d 101. Local 480 has complained too late about the composition of the jury. *E. g.,* Stewart v. Banks, 5 Cir., 1968, 397 F.2d 798. Finally, we are satisfied that the District Court's instructions to the jury did not confuse or mislead it regarding principles of law applicable to this case. Cf. Delancey v. Motichek Towing Service, Inc., 5 Cir., 1970, 897 F.2d 427 [No. 27401, June 1].

## I.

■ If Local 480's sole object was to force Gulf Electric to pay area standards and its actions were not intended to pressure neutral employers such as Gulf Coast to cease doing business with Gulf Electric and were reasonably limited to accomplish its primary object, then Local 480's actions did not constitute a secondary boycott. If, however, Local 480 did have the purpose of forcing Gulf Coast to sever its ties with Gulf Electric, and its picketing was designed to accomplish that purpose, its actions amounted to a secondary boycott in violation of National Labor Relations Act § 8(b) (4) (i) and (ii) (B), 29 U.S.C. § 158(b) (4) (i) and (ii) (B), and it may be held liable to Gulf Coast. Labor Management Relations Act § 303, 29 U.S.C. § 187. See International Bro. of Elec. Wkrs., Local 480 v. N. L. R. B., 1969, 134 U.S.App.D.C. 178, 413 F.2d 1085, 1087.

In Sailors' Union of the Pacific [Moore Drydock], 92 N.L.R.B. 547 (1950), the Labor Board established guidelines for picketing one subcontractor at a common construction site. Four standards for picketing in common situs

situations would be considered presumptive of valid primary activity:

"\* \* \* (1) that the picketing be limited to times when the situs of dispute was located on the secondary premises, (2) that the primary employer be engaged in his normal business at the situs, (3) that the picketing take place reasonably close to the situs, and (4) that the picketing clearly disclose that the dispute was only with the primary employer. These tests were widely accepted by reviewing federal courts. \* \* \*"

Local 761, International Union of Elec., Radio & Mach. Workers v. N. L. R. B. [General Electric], 366 U.S. 667, 677, 81 S.Ct. 1285, 1291, 6 L.Ed.2d 592 (1961). In this case, Gulf Electric, the primary employer, was engaged in its normal business on the premises of Gulf Coast, the secondary employer. The picketing was limited to the single gate used by Gulf Electric and persons doing business with Gulf Electric. The picket signs stated clearly that the dispute was only with Gulf Electric. Thus the *Moore Drydock* guidelines were followed by Local 480. Formal compliance with these guidelines, however, does not mean that picketing with a secondary object can be done lawfully, for there remains for the trier of fact in section 303 cases, as for the Labor Board in unfair union labor practice cases, the determination whether picketing has gone beyond the union's avowed primary purpose. See, *e. g.*, International Bro. of Elec. Wkrs., Local 480 v. N. L. R. B., 1969, 134 U.S. App.D.C. 178, 413 F.2d 1085, 1089; N. L. R. B. v. Northern Cal. Dist. Coun. of Hod Carriers, etc., 9 Cir., 1968, 389 F.2d 721, 725.

Determining the legality of the very union practices in issue here, the Labor Board found, on June 26, 1968, that Local 480's picketing at the Tracetown Center site went beyond the union's avowed primary purpose and was aimed at Gulf Coast, with the object of forcing Gulf Coast to replace Gulf Electric as the electrical subcontractor. 172 N.L.R.B. No. 64. On April 16, 1969, the District of Columbia Circuit ordered enforcement of the Labor Board's order. International Bro. of Elec. Wkrs., Local 480 v. N. L. R. B., 1969, 134 U.S.App.D.C. 178, 413 F.2d 1085. The Court stated:

"The Board concluded that the union's equivocal responses to offers aimed at meeting the union's demand for area standards, plus the union's clear and quick response to the suggestion that Gulf Electric be replaced by a union employer, indicated that the union's picketing was aimed at Gulf Coast, with the object of forcing Gulf Coast to replace Gulf Electric. The Board took the position \* \* \* that when such an object can be shown in a common situs picketing situation, a violation of the Act is made out despite the union's formal compliance with the *Moore Drydock* guidelines. We agree." Id. 413 F.2d at 1088–1089.

We have carefully reviewed the extensive record in this case. For the reasons found persuasive by the District of Columbia Circuit, we conclude that the jury was warranted, after viewing the dispute at first hand, in finding that Local 480 committed a secondary boycott, thus subjecting itself to liability to the secondary employer, Gulf Coast.

## II.

Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, permits any person injured in his business or property as a result of a secondary boycott to bring an action to recover the damages he has sustained, plus the costs of the suit. The statute is compensatory in nature, Local 20, Teamsters, etc., Union v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964), and damages may be recovered only for actual losses sustained as a result of the unlawful secondary activity. Sheet Metal Wkrs. Int. Ass'n, Loc. 223 v. Atlas Sheet Metal Co., 5 Cir., 1967, 384 F.2d 101, 109. Although the employer must prove that he has suffered some injury to his business or property, he need not detail the exact amount of

damages suffered; it will suffice if the evidence shows the extent of damages as a matter of just and reasonable inference, although the result may be only approximate. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); International U. of Op. Eng., Local 653 v. Bay City Erec. Co., 5 Cir., 1962, 300 F.2d 270, 272.

In this case we are of the opinion that the District Judge did not abuse his discretion by allowing the jury's award of damages to stand over Local 480's motion for a judgment notwithstanding the verdict or a new trial. The summaries prepared by Gulf Coast's accountant and other evidence sufficiently showed the probable amount of damages sustained by Gulf Coast to warrant the jury's finding that $38,349.78 was the extent of those damages, as a matter of just and reasonable inference.

### III.

Local 480 argues that the District Court erred in excusing for cause from the jury panel all persons who were members of any labor organization. This objection to the composition of the jury panel was first made in the union's motion for a judgment notwithstanding the verdict or a new trial. Such a post-trial allegation, standing alone, does not constitute evidence reviewable by this Court. Joynor v. Berman Leasing Company, 5 Cir., 1968, 398 F.2d 875, 877. Moreover, we have held that a party to a civil action waives his right to object to the composition of the panel when he fails to make his objection before the trial commences. Stewart v. Banks, 5 Cir., 1968, 397 F.2d 798, 799. We reasoned in Stewart that

"[i]f a civil litigant is permitted to go to trial and ascertain the verdict of the jury, and if the verdict be adverse to his position, then for the first time raise some question concerning the manner in which the jury lists in the Court are composed, and if it should be determined that there was some imperfection in the jury lists, this

would mean that the litigant by deliberately failing to make timely objection had had two opportunities to have his case presented to a jury."

Id. See also Atlas Roofing Manufacturing Company v. Parnell, 5 Cir., 1969, 409 F.2d 1191. This reasoning is especially applicable to this case, in which a union local informs us that it stood silently by while members of labor organizations were "systematically excluded" from the jury panel. Local 480 may properly be held to have waived its rights under the circumstances.

### IV.

Local 480's objections to the District Judge's charge to the jury must be rejected. In reviewing the claim of an alleged infirm instruction, we are guided by the general rule that the charge

"* * * should be taken as a whole and read in its entirety; that is, each instruction must be considered in connection with others of the series referring to the same subject and connected therewith, and if, when taken together, they properly express the law as applicable to the particular case, there is no just ground of complaint, even though an isolated and detached clause is in itself inaccurate, ambiguous, incomplete, or otherwise subject to criticism."

Delancey v. Motichek Towing Service, Inc., 5 Cir., 1970, 427 F.2d 897, 901 [No. 27401, June 1], citing Nolan v. Greene, 6 Cir., 1967, 383 F.2d 814, 816. Our function is to satisfy ourselves that the instructions, viewed with "orbitary and universal" scrutiny, McDaniel v. Slade, 5 Cir., 1968, 404 F.2d 607, 609, "show no tendency to confuse or mislead the jury with respect to the principle of law applicable." Allers v. Bohmker, 7 Cir., 1952, 199 F.2d 790, 792.

In this case we are satisfied that the District Judge's instructions on the issue whether Local 480's picketing was primary or secondary activity, "viewed, if necessary, through corrected lenses," Delancey v. Motichek Towing Service,

Inc., 5 Cir., 1970, 427 F.2d 897 [No. 27401, June 1], properly expressed the law applicable to the issues in dispute.

We perceive no basis for upsetting the jury's verdict in favor of Gulf Coast.

Affirmed.