501 F.2d 668
 87 L.R.R.M. (BNA) 2475, 75 Lab.Cas. P 10,332
 REFRIGERATION CONTRACTORS, INC., Plaintiff-Appellee-Cross
Appellant, International Association of Machinists
& Aerospace Workers, AFL-CIO Lodge No.
12, Intervenor-Plaintiff-Appellee,
v.
LOCAL UNION NO. 211 OF the UNITED ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OFthe PLUMBING AND PIPEFITTING
INDUSTRY OF the UNITED STATES AND
CANADA,
AFL-CIO,Defendant-
Appellant-
Cross Appellee.
 No. 73-2931.
 United States Court of Appeals, Fifth Circuit.
 Sept. 27, 1974
Rehearing Denied Nov. 5, 1974.
 
 W. Wiley Doran, Thomas J. Mitchell, Houston, Tex., for defendant-appellant-cross appellee.
 Joe S. Powell, Houston, Tex., for plaintiff-appellee-cross appellant.
 James P. Wolf, Houston, Tex., for Int'l Ass'n of Machinists, and others.
 Before DYER and MORGAN, Circuit Judges, and KRAFT, District Judge.
 LEWIS R. MORGAN, Circuit Judge.
 
 
 1
 Following a non-jury trial, plaintiffs-appellees were awarded damages under 303 of the labor Management Relations Act, 29 U.S.C. 187, for losses caused by defendant-appellant's violations of 8(b)(4)(i) and (ii), (B) and (D) of the Act, 29 U.S.C. 158(b)(4)(i) and (ii), (B) and (D). We affirm in part, reverse in part, and remand for further proceedings.
 
 
 2
 In the summer of 1970, appellee Refrigeration Contractors, Inc. (hereafter Refrigeration) was awarded contracts to install commercial refrigeration equipment in four restaurants at two locations in Houston, Texas. Before Beginning work on any of the projects, Refrigeration entered a collective bargaining agreement with appellee Lodge No. 12, International Association of Machinists and Aerospace Workers (hereafter Machinists). Members of Local No. 211 of the United States Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (hereafter Pipefitters) had been employed by another subcontractor to install the heating and air conditioning equipment in the projects. Shortly after work began at one of the jobsites, representatives of the Pipefitters approached the Machinists' steward on the job. They told him that the Machinists were doing Pipefitters' work, and that if they continued to do it, the Pipefitters would walk off the job. When the Machinists did not stop work, the Pipefitters made good on their threat, a move which threatened to delay the project indefinitely. The district court found that as a result, great pressure was brought to bear on the primary contractors to replace Refrigeration's Machinist employees with the Pipefitter employees of a different subcontractor, that the primary contractors did so, and that as a result, Refrigeration and Machinists suffered damages of $14,072.72 and $2,883.10, respectively. Before bringing the 303 action, appellees instituted a proceeding under 10(k) of the Act, 29 U.S.C. 160(d), before the National Labor Relations Board which found that the disputed work belonged to the employees of Refrigeration and that there was reasonable cause to believe that appellant had violated the Act.
 
 
 3
 In pertinent part, 29 U.S.C. 158(b)(4) makes it an unfair labor practice for 'a labor organization or its agents'
 
 
 4
 (i) to engage in . . . a strike . . . or (ii) to threaten, coerce, or restrain any person engaged in commerce . . . where in either case an object thereof is-- (B) forcing or requiring any person . . . to cease doing business with any other person . . . (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization . . . rather than to employees in another labor organization . . ..
 
 
 5
 Appellant initially contends its boycott was not prohibited since it was purely for the purpose of protesting the 'substandard' wage paid by Refrigeration, and since no genuine jurisdictional dispute existed between the Pipefitters and the Machinists. The record is replete with testimony supportive of the district court's finding that appellant's activities and purposes violated the Act. It should hardly be necessary to point out that the activity is illegal if an object is one prohibited by the Act, regardless of the presence of other, legal motives. N.L.R.B. v. Denver Building and Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). The record clearly indicates that an object of appellants strike and threats was to force the contractors to cease doing business with Refrigeration and to assign the work to companies employing Pipefitters. Additionally, there was testimony that Machinists as well as Pipefitters performed the sort of work involved in the Houston area, indicating the existence of true jurisdictional dispute.
 
 
 6
 Appellant's second contention is that plaintiffs failed to prove a causal relationship between appellant's acts and the termination of Refrigeration's contracts. This claim is wholly without merit, since as to each of the three cancelled contracts, the contracting parties testified that the termination resulted from pressure generated by the Pipefitters' refusal to work.
 
 
 7
 The calculation of Refrigeration's damages proved troubling. Normally in such cases, the innocent contractor is entitled to any portion of the contract price remaining unpaid, less the amount it would have cost to complete the work. Here, however, Refrigeration did not employ cost accounting techniques; although the record is far from clear, it appears that Refrigeration is unable to calculate what its costs would have been on any of the three jobs. The district court seems, as a result, simply to have awarded as damages the unpaid contract prices. This will not do, since the work was not completed.
 
 
 8
 On remand, should calculation of Refrigeration's costs prove impossible, another approach is open to the district court. Refrigeration's accountant testified that the company normally operated on a 20-25% Profit margin on similar jobs, and its president set the figure at 23%. The court may therefore assess damages as 23% Of the unpaid contract prices. Of course, this method will not provide a totally accurate measure of damages, but it is clearly acceptable under the guidelines established by this court for 303 actions. As we said in Sheet Metal Workers v. Atlas Sheet Metal Company,384 F.2d 101, 109 (5 Cir. 1967):
 
 
 9
 While the employer must prove that he has sustained some injury to his business or property, he need not detail the exact amount of damages suffered. It is sufficient if the evidence supports a just and reasonable approximation.
 
 
 10
 This principle was cited with approval in Vulcan Materials Company v. United Steelworkers of America, 430 F.2d 446 (5 Cir. 1970), and in Gulf Coast Building and Supply Company, Inc. v. International Brotherhood of Electrical Workers, 428 F.2d 121, 125 (5 Cir. 1970), wherein the court said:
 
 
 11
 Although the employer must prove that he has suffered some injury to his business or property, he need not detail the exact amount of damages suffered; it will suffice if the evidence shows the extent of damages as a matter of just and reasonable inference, although the result may be only approximate.
 
 
 12
 In Gulf Coast, the award of damages was based on accountant's summaries quite similar to the evidence introduced by Refrigeration.
 
 
 13
 The district court also awarded damages based on the 'loss' of Refrigeration's contract to install equipment at the Shell Information Center in Houston, predicating its award on the existence of an oral contract. The record reveals no evidence of such a contract; rather, Refrigeration simply submitted a bid for the job which was not accepted. In such a situation, appellant can hardly be held liable since appellee suffered no loss. The award was error and must be reversed.
 
 
 14
 To the extent Refrigeration employees were rendered unproductive by appellant's wrongful activities, their wages are proper elements of Refrigeration's damages, as the district court held. Atlas, supra, 384 F.2d p. 110. However, there is some conflict in the testimony as to whether the hourly rate claimed by Refrigeration is that at which the employees were actually paid. Naturally, Refrigeration may recover only such wages as were actually paid out; we remand for further findings on this issue.
 
 
 15
 Finally, numerous cases make clear that damages in a 303 case may include costs of reasonable legal action taken to effect a resumption of work. See, for example, Abbott v. Local Union No. 142 of United Associations of Journeymen and Apprentices of Pipe Fitting Industry of United States and Canada, 429 F.2d 786 (5 Cir. 1970), Mason-Rust v. Laborers' International Union of North America, 435 F.2d 939 (8 Cir. 1970). While 'reasonable legal action' has been held to included the filing of unfair labor practice charges with the National Labor Relations Board, it does not include the bringing of the 303 damages suit itself. Atlas, supra, 384 F.2d p. 110. Appellant's contention that attorney's fees should not be awarded for the NLRB proceeding because work had already been 'resumed' is without merit, since it was Pipefitters, not Machinists, who had 'resumed' the work thanks to the very violation of the Act on which their liability is based. To hold otherwise would be to insulate Pipefitters from the consequences of their illegal acts merely because they were successful in driving appellees from the work that was rightfully theirs.[1] Thus, plaintiffs may recover their attorney's fees incurred in the NLRB hearing, but not those incurred in the instant suit.
 
 
 16
 Affirmed in part, and reversed and remanded in part.
 
 
 
 [1]
 Cf. Mason-Rust v. Laborers' International Union of North America, 435 F.2d 939 (8 Cir. 1970), wherein the court allowed as damages attorney's fees incurred after the work had been resumed because it was clear that the legal action played a decisive role in the union's decision to terminate its illegal activity