Everett **SILLMAN** et al.,
Plaintiffs-Appellees,

v.

**TEAMSTERS UNION LOCAL 386, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant-Appellant.**

**Nos. 74–1078 and 74–1165.**

United States Court of Appeals,
Ninth Circuit.

May 3, 1976.

Stephen H. Naiman, San Francisco, Cal. (argued), Brundage, Neyhart, Beeson & Tayer, San Francisco, Cal., for Teamsters Union Local 386.

George Tichy, San Francisco, Cal. (argued), for Everett Sillman, and others.

## OPINION

Before KOELSCH and WRIGHT, Circuit Judges, and LUCAS,* District Judge.

LUCAS, District Judge:

Defendants, Teamsters Union Local 386, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America ("Local 386") appeal from the final judgment entered on the 17th day of August, 1973. This judgment assessed damages against the defendant in the amount of $53,133.00 plus costs. Plaintiffs, Everett Sillman and Gerald Williams, partners, d/b/a Hoskings Food Products, and Everett Sillman cross-appeal from the portion of the judgment that denied them reasonable attorneys' fees incurred in the prosecution of the action.

On April 20, 1966 Appellees filed a Complaint and on December 11, 1968, a First Amended Complaint, seeking recovery of damages under Section 303 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 187), for losses sustained by them as a result of Appellant's conduct in violation of Section 8(b)(4) of the National Labor Relations Act (29 U.S.C. § 158(b)(4)). On April 21, 1971, the District Court entered summary judgment against the defendant on the issue of liability, and set the question of recoverable damages only for trial.[1]

Appellees were partners in a business engaged in the distribution and sale at wholesale of grocery and other products used in the preparation of meals in restaurants, hospitals, schools, and other institutions. Hoskings' sales were made to numerous customers in and around Modesto, California.

For some years prior to March 1966, Local 386 had been party to a collective bargaining agreement with Hoskings Food Products. At the beginning of 1966 Hoskings and Local 386 began negotiations on a new contract. On March 21, 1966, after reaching an impasse in the bargaining for a new agreement, Local 386 struck.

Picketing commenced at the Hoskings' warehouse on March 21, 1966 and continued until about December 15, 1966. At various times during the period between March 21 and December 15, 1966, Local 386 engaged in roving situs picketing of Hoskings' trucks. On such occasions representatives of Local 386 followed Hoskings' trucks to customers' premises and picketed the truck while deliveries were being made.

On various occasions during the period between March 23, 1966 and May 23, 1966, Local 386 engaged in picketing at the consumer entrances of a number of Hoskings'

---

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

1. The liability issue had been previously decided by the National Labor Relations Board. On June 8, 1966, the Board issued a Complaint charging Local 386 with violations of Section 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act. Pursuant to a full hearing, the Administrative Law Judge issued his decision on February 24, 1967, holding that Local 386, by its picketing of Hoskings' customers, violated Section 8(b)(4)(ii)(B) of the Act (29 U.S.C. § 158(b)(4)(ii)(B)). The National Labor Relations Board adopted the decision and Order of the Administrative Law Judge on April 11, 1967. The District Court found this decision was res judicata on the issue of liability.

customers when no Hoskings' truck was making a delivery and without concurrent informational handbilling. In addition, Local 386 sent letters to Hoskings' customers notifying them that if they continued to purchase from Hoskings, Local 386 would place pickets or handbillers at consumer entrances to their premises in order to let the public know that the restaurant used Hoskings' products and to urge customers to insist that Hoskings' products not be used in the preparation of the restaurant's meals. Customer picketing and customer letters were found violative of the National Labor Relations Act by the National Labor Relations Board.

After two months of this unlawful picketing at the premises of Hoskings' customers, Local 386 was enjoined on May 23, 1966, from customer picketing and threats to picket customers, pursuant to a stipulated preliminary injunction issued by the District Court in a Section 10(*l*) proceeding under the National Labor Relations Act.

The damages issue was tried before the District Court on December 2–3 and 20, 1971 and October 10–11, 1972. The District Court heard extensive evidence regarding 54 of Hoskings' customer accounts. This evidence was used to calculate Hoskings' lost profits from the unlawful activity of Local 386. The District Court also heard evidence regarding debt financing to which Hoskings was forced to resort as a result of Local 386's illegal secondary activities. The District Court heard testimony from the plaintiffs' expert witness, Mr. Dunkar, regarding the loss of profits, Mr. Sillman's loss in the sale of his interest in Hoskings, and expenses incurred by Appellees' labor consultants, Sequoia Employers Council.

On March 9, 1973 the District Court filed its Findings of Fact and Conclusions of Law holding that Hoskings was entitled to damages in the following amounts and for the following items of loss: $24,147.00 for lost profits for the years 1966 and 1967 resulting directly from defendant's unlawful secondary activities in violation of Section 8(b)(4)(ii)(B) of the National Labor Relations Act; $7,422.00 as savings which would have accrued had the lost profits been available to meet working capital requirements, and had Appellees not been compelled to resort to debt financing; $1,728.00 for expenses paid to Sequoia Employers Council to assist in the presentation of evidence before the National Labor Relations Board and to encourage continued patronage of Hoskings' customers during the unlawful picketing; $2,384.00 as legal fees and telephone expenses incurred in securing a termination of the illegal picketing. In addition, the Court awarded $10,903.75 as attorneys' fees in prosecuting the Section 303 action.

The Court awarded damages in the amount of $17,452.00 to Appellee Everett Sillman individually, for the loss he suffered because Appellant's illegal secondary activities depressed the sales price of his partnership interest.

Subsequently, on August 24, 1973, the Court issued Amended Findings of Fact and Conclusions of Law and an Amended Judgment identical with the first, except that the award of attorneys' fees and costs for prosecution of the damages action was withdrawn. This was done pursuant to the defendant's Motion to Amend the judgment. Appellees bring a cross-appeal from this ruling and claim error in the District Court's reversal of its award of attorneys' fees. This raises a question of law for review by this Court. *See, e. g., Bryant Air Con. & H. Co., Inc. v. Sheet Metal W. I. Ass'n No. 541*, 472 F.2d 969, 972 (8th Cir. 1973).

Appellees cite the cases of *I.L.W.U. v. Juneau Spruce Corp.*, 189 F.2d 177, 13 Alaska 291 (9th Cir. 1951), *aff'd*, 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952), and *I.L.W.U. v. Hawaiian Pineapple Co.*, 226 F.2d 875 (9th Cir. 1955), in support of their argument that this Court has previously authorized award of attorneys' fees. However, reliance on these cases is misplaced because they did not directly deal with the attorneys' fees issue.

The Sixth Circuit has correctly characterized these decisions as follows:

"The appellants challenge the validity of the Trial Court's award of attorney fees as an element of damages in each of the three claims. The appellees reply by stating that this question has been determined in their favor in *International Longshoremen's, etc., Union v. Juneau Spruce Corp.,* 9 Cir., 1951, 189 F.2d 177, 13 Alaska 291, and in *International Longshoremen's, etc., Union v. Hawaiian Pineapple Co.,* 9 Cir. 1955, 226 F.2d 875. An examination of these opinions discloses that neither of them is authority for allowing attorney fees to any of the prevailing parties as an item of damages sustained by reason of the illegal work stoppage at the plant at Champaign." *Teamsters Local 984 v. HumKo Co.,* 287 F.2d 231, 243 (6th Cir. 1961).

■ There is no persuasive authority for the view that attorneys' fees for prosecuting a Section 303 suit may be recovered. *See, Sheet Metal Workers, Local 223 v. Atlas Sheet Metal Co.,* 384 F.2d 101 (5th Cir. 1967); *Teamsters Local 984 v. HumKo Co.,* 287 F.2d 231 (6th Cir. 1961); *Noranda Aluminum, Inc. v. United Bro. of Carpenters, etc.,* 382 F.Supp. 1258 (E.D.Mo.1973); *Navios Corp. v. National Maritime Union,* 236 F.Supp. 657 (E.D.Pa.1964), *aff'd,* 359 F.2d 853 (3rd Cir. 1966). Finally, nothing in Section 303 of the Act, or in its legislative history, authorizes the award of attorneys' fees. *See, Bryant Air Con. & H. Co., Inc. v. Sheet Metal W. I. Ass'n No. 541,* 472 F.2d 969, 972 (8th Cir. 1973).

■ The findings of the trial judge indicate the factors he took into account in allowing compensatory damages that were directly and proximately caused by the union's two months of unlawful activity. It is clear that there is substantial evidence to support the findings of the District Court and they are not clearly erroneous in any respect.

Affirmed.