**BEXAR PLUMBING COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–3730.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1976.

Clinton S. Morse, James V. Carroll, III, Houston, Tex., for petitioner.

Elliott Moore, Deputy Assoc. Gen. Counsel, John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Assoc. Gen. Counsel, Jay E. Shanklin, Robert F. Kane, Attys., N.L.R.B., Washington, D. C., for respondent.

Louis V. Baldovin, Jr., Reg. Director, Houston, Tex., for other interested parties.

Before RIVES, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

█ Bexar Plumbing Company petitions for review of the NLRB's order dismissing Bexar's complaint against Plumbers Local 68 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the Union). The case involves the always troublesome issue of the legality of picketing against a petitioner, here a plumbing subcontractor, conducted at a common situs construction site; the complaint alleges that the picketing here violated section 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4) (1970). Fully cognizant that only in a rare case should this court reject a factual finding of the Board,[1] we are convinced that this is such a case.

The picketing in question occurred at the senior high school in Dayton, Texas, about 40 miles northeast of Houston. The picketing lasted approximately four days in September–October, 1974. The picket signs protested that Bexar was unfair to union plumbers by paying substandard wages to its employees. While Bexar was the plumb-

---

1. *See Ward v. NLRB,* 462 F.2d 8, 9 (5th Cir. 1972).

ing subcontractor on this job, only one Bexar employee was working there at that time. Most of the neutral employees working at the site honored the picket, and after four days, the general contractor requested that Bexar leave the job. Bexar remained off the job for approximately six weeks. After a full hearing, the Board's Administrative Law Judge recommended that the complaint be dismissed, and the Board affirmed his findings, conclusions and recommended order.[2]

The appropriate standard of review in this case is clear. We are to grant the petition for review and vacate the NLRB's order if, and only if, we conclude that on the entire record there is not substantial evidence supporting the Board's dismissal. *Shell Chemical Co. v. NLRB,* 495 F.2d 1116, 1126 (5th Cir.), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 449 (1974); *Ward v. NLRB,* 462 F.2d 8, 11 (5th Cir. 1972). Although this limited standard of review requires us to defer to the expertise of the Board in our evaluation of its factual determinations, we must reject the administrative decision if it is demonstrably inconsistent with the statutory mandate or frustrates the congressional policy underlying section 8(b)(4)(ii)(B). *See United Gas Pipe Line Co. v. NLRB,* 471 F.2d 395, 399 (5th Cir. 1973).

Our understanding of the statutory mandate and congressional policy is fully explicated in *Ramey Construction Co. v. Painters, Local 544,* 472 F.2d 1127 (5th Cir. 1973). The crucial issue is the union's object rather than the effect of the picketing; this picketing was illegal if *an object* was to cause Bexar's customers to cease doing business with it or to force Bexar to go out of business, notwithstanding the fact that the picketing had other, lawful objects.

In this case, Bexar does not challenge the Board's conclusion that the picketing complied with the standards of *Sailors' Union*

of the Pacific (Moore Dry Dock Co.), 92 N.L.R.B. 547 (1950). Nor does Bexar point to any evidence demonstrating a violation of our requirements in *Superior Derrick Corp. v. NLRB,* 273 F.2d 891 (5th Cir. 1960). Bexar's attack is directed at the Board's failure to assess the totality of the evidence properly and conclude from it that the proscribed purpose was present despite compliance with the more "objective" requirements of *Moore Dry Dock* and *Superior Derrick. See Ramey Construction Co. v. Painters, Local 544, supra,* 472 F.2d at 1135. We agree with Bexar. The evidence relied on by the Board provides tenuous support at best for its conclusion, and the Board was much too restrictive in its view of the evidence, overlooking or ignoring evidence of strong probative value which was inconsistent with its view of the case. *See United Gas Pipe Line Co. v. NLRB, supra,* 471 F.2d at 400.

Petitioner's principal argument here focuses on the scanty information available to the union about whether Bexar was actually paying substandard wages. The sole evidence offered by the union on this point was thin to the point of transparency: the testimony of a union representative that he received information about what Bexar paid its apprentices from an unnamed and unproduced apprentice whom he once encountered at the Dayton construction site.[3] And though the Board could credit this if it wished, a choice with which we do not interfere, it failed to consider other probative facts on this issue. This minimal information related only to the apprentice wage scale, but the only Bexar employee permanently stationed at the site which the union chose to picket was not an apprentice. The signs employed in the picketing referred to substandard wages paid to employees and thus were not limited to information about apprentices. Moreover, the Board gave inadequate consideration to the union's total failure even to seek to verify Bexar's wage

---

**2.** We therefore attribute these findings and conclusions to the Board in the remainder of this opinion.

**3.** As the Board correctly noted, the union's other information was too stale to qualify as reliable information about Bexar's wages in September 1974.

rates with the company itself. Although we need not decide that this failure to verify, standing alone, constitutes a prima facie case of the alleged unlawful object,[4] the failure to make any reasonable effort at verification is probative of the proscribed intent even though the union possessed some slight information about apprentice wage rates. *See Gulf Coast Building & Supply Co. v. Electrical Workers, Local 480,* 428 F.2d 121, 125 (5th Cir. 1970); *Electrical Workers, Local 480 v. NLRB,* 134 U.S.App. D.C. 178, 413 F.2d 1085, 1088 (1969); *Lawhon Construction Co. v. Carpet, Local 1179,* 394 F.Supp. 520, 524–25 (W.D.Mo. 1974), *aff'd,* 513 F.2d 723 (8th Cir. 1975) (per curiam).

The Board likewise gave inadequate weight to the pattern of union picketing against Bexar. The Board apparently reasoned that the union's failure to picket Bexar's other jobs was a factor in its favor. To the contrary, we believe that the union's selective picketing, absent any indication that Bexar's wages varied from job to job, strongly suggests that the picketing was designed to maximize the likelihood of secondary effects rather than to publicize substandard wages in general.

Finally, the Board rejected Bexar's argument that the failure to picket Bexar's headquarters in downtown Houston was highly probative of the union's proscribed secondary object. While the weight to be given this circumstance is a matter within the competence of the Board, we note that the Board's decision to give it minimal weight in this case is tainted by the Board's failure to analyze Bexar's argument adequately. The Board found that the Dayton site was on a "well-traveled thoroughfare" and that Bexar's office was on a downtown Houston street carrying a "substantial" volume of traffic, but it made no findings comparing the amount of traffic on the two roads. Nor did it examine the comparative speeds of traffic flow, a factor critical to the potential success of picketing designed to attract the attention of passing motorists. The Board stressed that picketing at the home office would not reach the Bexar employees working at the Dayton site, but this fact is entirely irrelevant since the union admitted its picketing was designed to affect the public rather than employees. Similarly, the Board discounted the union's selection of a picketing site because different segments of the public would be reached in the two locations. Doubtless this is true, but we fail to see its legal significance. Indeed, the likelihood that public pressure would lead indirectly to the improper objective of throwing Bexar off the Dayton job seems much greater if the segment of the public appealed to is that which passes the Dayton school than if the appeal is directed to Bexar's potential future customers in the metropolitan Houston area.

The Board's decision is too greatly at war with the record to stand. The petition for review is granted. The Board's dismissal of Bexar's complaint is vacated and the case remanded for further proceedings consistent with this opinion.

---

4. *Compare Sales Delivery Drivers, Local 296 (Alpha Beta Acme Markets, Inc.),* 205 N.L.R.B. 462, 473 n. 13 (1973) (a case brought under 29 U.S.C. § 158(b)(7)).