**L. J. MAXEY, Jr., d/b/a King-O-Meat Co., Plaintiff-Appellee,**

**v.**

**BUTCHERS' UNION LOCAL NO. 126, AMALGAMATED MEAT CUTTERS AND BUTCHERS WORKMEN OF NORTH AMERICA, AFL–CIO, Defendant-Appellant.**

**No. 78–1601.**

United States Court of Appeals, Ninth Circuit.

Submitted May 15, 1980.

Decided July 29, 1980.

Rehearing Denied Oct. 3, 1980.

Michael B. Roger, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for defendant-appellant.

George J. Tichy, II, Harry Finkle, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiff-appellee.

Before SNEED and POOLE, Circuit Judges, and SWEIGERT *, District Judge.

SNEED, Circuit Judge:

Appellant, Butchers' Union Local 126, appeals from a judgment of the district court ruling that Local 126 committed an unfair labor practice by threatening to picket, and in some cases picketing, customers of appellee, L. J. Maxey, Jr., d/b/a King-O-Meat Company. Because the Union's conduct was found to violate section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4) (1976),[1] the district court assessed damages totaling $89,064.93 against the Union for King-O-Meat's lost earnings sustained as a result of the Union's unlawful conduct. The court also awarded damages for $3,395.00 attorney's fees and $1,215.00 labor consultant expenses incurred by King-O-Meat in the National Labor Relations Board proceedings initiated in order to stop the Union's secondary picketing.

The Union challenges the district court's determinations with respect to both liability and damages. We affirm the district court's judgment that the Union's conduct constituted an unfair labor practice in violation of section 8(b)(4). We further agree with the court's assessment of lost earnings damages which King-O-Meat suffered as a result of the Union's unlawful conduct. We hold, however, that based upon the governing law of this circuit,[2] as announced in *Mead v. Retail Clerks Local 839,* 523 F.2d 1371 (9th Cir. 1975), the award of attorney's fees and labor consultant expenses incurred in proceedings before the NLRB was improper under section 303 of the Labor Man-

---

* Honorable William T. Sweigert, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Section 8(b)(4) provides in pertinent part:
   It shall be an unfair labor practice for a labor organization or its agents—
       *  .*  *  *  *  *
   (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
       *  *  *  *  *  *
   (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing
   . . . .

2. We recognize that in *Sillman v. Teamsters Local 386,* 535 F.2d 1172 (9th Cir. 1976), this court affirmed a district court judgment which included an award of legal and labor consultation fees incurred in NLRB proceedings. We find, however, that *Sillman* is not controlling on this ground since the *Sillman* court did not address the issue of this element of the award. *Mead* is therefore the governing law in this case.

agement Relations Act, 29 U.S.C. § 187 (1976)[3] and we reverse in part.

Our jurisdiction rests on 28 U.S.C. § 1291 (1976).

## I.

### FACTUAL BACKGROUND

L. J. Maxey, Jr., d/b/a King-O-Meat Company, was a meat processing company engaged in the preparation of meat products for resale to restaurants and other institutions in and around Fresno, California. For a number of years prior to the commencement of this action, Butchers' Union Local 126 served as the collective bargaining representative for some of King-O-Meat's employees, including butchers, meat wrappers, and truck drivers.

King-O-Meat and Local 126 were parties to a series of collective bargaining agreements, the last of which expired in December 1973. Following unsuccessful efforts to negotiate a new agreement, the Union called a strike on April 12, 1974. A number of Union members chose not to participate in the strike, however, and King-O-Meat was thus able to continue its business operations.

On April 18, 1974, Local 126 sent letters to eighteen restaurants which purchased King-O-Meat products, notifying them that their establishments would be picketed unless they discontinued all purchases of King-O-Meat products. In addition, several of the customers to which this letter was sent also received verbal threats of picketing, and three customers were actually picketed.[4]

Shortly after these occurrences, King-O-Meat filed charges with the NLRB seeking an order to stop the Union's unlawful secondary activities. On June 10, 1974, a settlement agreement was reached, whereby the Union agreed not to picket or threaten to picket King-O-Meat's customers.

The very next day, Local 126 sent another letter, practically identical to the April 18 letter, except that it indicated that the Union would engage in handbilling and did not mention picketing. Finally, on June 27, 1974, a third letter was sent to these restaurants explaining that the labor dispute was not over and urging them not to purchase meat products from King-O-Meat. These customer letters were found to constitute an unfair labor practice, resulting in a cease-and-desist settlement agreement, and that agreement was subsequently enforced by this court. *NLRB v. Butchers' Union Local 126*, No. 75–1530 (9th Cir. Apr. 9, 1975).

In May 1974, King-O-Meat filed this action for damages in the district court pursuant to section 303 of the Labor Management Relations Act, 29 U.S.C. § 187 (1976). Local 126 challenges the district court's ruling that the Union's conduct had violated section 8(b)(4). The Union further challenges the court's award of damages to King-O-Meat for its lost earnings and expenses for labor consultant and attorney's fees incurred in the NLRB proceedings.

## II.

### UNFAIR LABOR PRACTICE VIOLATION

Section 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158 (b)(4)(ii)(B) (1976), makes if an unfair labor practice for a union to engage in

---

**3.** 29 U.S.C. § 187 reads:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

**4.** At two of these restaurants, the picketing was conducted for only brief periods. The Union picketed various McDonald's restaurants over a longer period of from four to six weeks.

coercive conduct in order to induce customers of an employer to cease doing business with that employer. In *NLRB v. Fruit & Vegetable Packers Local 760 [Tree Fruits]*, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964), the Supreme Court construed this section to permit picketing so long as its object is limited to persuading consumers not to buy the struck product. Following the *Tree Fruits* decision, this court summarized the scope of the prohibition as follows:

> The principle enunciated in *Tree Fruits* permits a union to engage in picketing at the establishment of a secondary employer, so long as it . . . is not an attempt to "restrain or coerce" the secondary employer to cease doing business with the primary employer. A mere facade of "consumer" picketing cannot foreclose the Board from determining the true purpose of the union's conduct. What in actuality is . . . veiled coercion of the secondary employer, cannot by the simple use of the words "consumer directed," be given statutory protection. *NLRB v. Millmen Local 550*, 367 F.2d 953, 955–56 (9th Cir. 1966).

Thus, the issue in this case is whether the Union's only objective in picketing and threatening to picket King-O-Meat customers was to appeal to consumers, or whether the Union sought to induce the establishments to cease doing business with King-O-Meat.

The district court concluded that Local 126's conduct manifested an express, illegal object to force or coerce King-O-Meat's customers to cease doing business with the company and therefore violated section 8(b)(4). Its finding of an unlawful object was based on considerable evidence in the record: the distribution of the April 18 letter to eighteen restaurants, verbal threats of picketing to five of these same restaurants, and actual picketing of three restaurants.

The Union argues that the district court could not properly consider the totality of the Union's conduct since this would make it liable for labor violations with respect to some restaurants on the basis of its actions directed at other restaurants. This contention is not justified by the facts. The district court found an express object in the April 18 letter, by itself, to coerce the restaurants to cease doing business with King-O-Meat. In addition, the district court found that in all the restaurants which were the focus of Union activities, King-O-Meat products were integrated with other products in the preparation of meals. Thus, the district court properly concluded that under the "integrated products" doctrine, the Union could not have conducted lawful consumer picketing at the restaurants in question, and that the letter thus threatened to engage in conduct which was necessarily illegal. *Local 248, Meat & Allied Food Workers*, 230 N.L.R.B. 189 n.3 (1977); *American Bread v. NLRB*, 411 F.2d 147, 154 (6th Cir. 1969).

We find no error in the district court's finding that the Union violated section 8(b)(4) by sending the April 18 letter with an illegal object. Moreover, since all eighteen customers of King-O-Meat received this letter, the district court properly concluded that the Union committed an unfair labor practice with respect to each customer. We therefore affirm its judgment that the Union violated section 8(b)(4).

### III.

### LOST EARNINGS DAMAGES

It is well-settled that a trial court's computation of damages is a determination of fact and should be upheld on appeal unless clearly erroneous. *Felder v. United States*, 543 F.2d 657, 663 (9th Cir. 1976). In *Mead v. Retail Clerks Local 839*, 523 F.2d 1371 (9th Cir. 1975), this court held that a business which was the victim of unlawful union activity could recover damages for lost profits and that damages should be calculated under "a relatively relaxed standard of proof, allowing recovery on evidence supporting 'a just and reasonable inference,' more likely true than not, that the employer was damaged because of picketing or other union pressure . . . ." *Id.* at 1379; *see also Noranda Aluminum, Inc.*

v. United Brotherhood of Carpenters, 528 F.2d 1304, 1309 (8th Cir. 1976); Refrigeration Contractors, Inc. v. Local 211, United Association of Journeymen, 501 F.2d 668, 671 (5th Cir. 1974); Mason-Rust v. Laborers Local 42, 435 F.2d 939, 945–46 (9th Cir. 1970); Vulcan Materials Co. v. United Steel Workers of America, 430 F.2d 446, 457–58 (5th Cir. 1970), cert. denied, 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247 (1971); Plumbers Local 761 v. Matt J. Zaich Construction Co., 418 F.2d 1054, 1059 (9th Cir. 1969).

The district court's calculation of damages for lost earnings was based largely on the testimony of King-O-Meat's accountant, Zeki Abaci. Mr. Abaci determined the total amount of lost revenues by calculating King-O-Meat's average monthly sales to each of the eighteen restaurants over a fifteen-month base period prior to April 1974, and then comparing that figure with average monthly sales following the commencement of the Union's secondary activities. Mr. Abaci also determined, on the basis of King-O-Meat's records, the percentage of total lost revenue which would have been used to defray fixed expenses and the percentage of total revenue which would have represented net operating income, or profit. Based on Mr. Abaci's testimony, the district court concluded that King-O-Meat's total revenues lost due to the Union's unlawful conduct amounted to $626,776.40, of which 4.7 percent would have been used to defray fixed expenses and 9.1 percent would have been net operating income, which amounted to the total sum of $89,064.03. This figure reflected damages only for losses incurred over a one-year period since most of the restaurants resumed buying from King-O-Meat in June or July of 1975.

Under the standard of proof described in Mead, the district court's determination of damages for King-O-Meat's lost earnings was a just and reasonable inference and was supported by substantial evidence in the record. We therefore affirm this aspect of the damage award.

IV.

## ATTORNEY'S FEES AND LABOR CONSULTANT EXPENSES

We find merit in appellant's objection to the district court's award of attorney's fees and labor consultant expenses incurred by King-O-Meat in the NLRB proceedings. In Mead, supra, this court set aside a similar fee award and reasoned that to give damages for legal expenses incurred in NLRB proceedings would be inconsistent with the "American Rule" which normally forbids attorney's fee awards. Moreover, if a prevailing party could recover attorney's fees incurred in Board proceedings by bringing a subsequent 303 action, it would undermine the Board's rule which allows recovery of such fees only where the charged party's defense is frivolous or in bad faith. 523 F.2d at 1381. The court in Mead concluded that, "[i]t is for the Board, not the courts, to determine whether the conflicting interests are best resolved by imposing litigation costs upon the defeated party before the Board." Id.

Appellee argues that Sillman v. Teamsters Local 386, 535 F.2d 1172 (9th Cir. 1976), decided seven months after Mead, is the controlling law in this case. In Sillman, this court affirmed, without mention of Mead, a district court judgment which included an award of legal and labor consultation fees incurred in NLRB proceedings.

We reject appellee's argument as unsound since the Sillman court did not address the issue of this element of the award. Mead, therefore, continues to state the law of this circuit, and under that law, the district court erred in awarding damages for labor consultant and attorney's fees.

Affirmed in part and Reversed in part.